MARTIN N. JENSEN (SBN 232231)
THOMAS L. RIORDAN (SBN 104827)
**PORTER SCOTT**
350 University Ave., Suite 200
Sacramento, CA 95825
Telephone: 916.929.1481
Facsimile: 916.927.3706
Email: mjensen@porterscott.com
Email: triordan@porterscott.com

JAMES L. BIKOFF (*Pro Hac Vice*)
BRUCE A. McDONALD (*Pro Hac Vice*)
HOLLY B. LANCE (*Pro Hac Vice*)
**SMITH, GAMBRELL & RUSSELL LLP**
1055 Thomas Jefferson Street, N.W., Suite 400
Washington, D.C.  20007
Telephone:    202.263.4341
Facsimile:     202.263.4329
Email: jbikoff@sgrlaw.com
Email: bmcdonald@sgrlaw.com
Email: hlance@sgrlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY, a District of Columbia nonprofit corporation, and the CALIFORNIA STATE GRANGE, its chartered California chapter,<br><br>     Plaintiffs,<br><br>v.<br><br>CALIFORNIA STATE GRANGE, a California corporation, d/b/a "CSG," and ROBERT McFARLAND, a California resident,<br><br>     Defendants. | Case No.  2:16-cv-00201-WBS-AC<br><br>*The Honorable William B. Shubb, Courtroom 5*<br><br>**FIRST AMENDED COMPLAINT FOR FALSE DESIGNATION OF ORIGIN, TRADE LIBEL, INTENTIONAL INTERFERENCE IN CONTRACTUAL RELATIONS, COPYRIGHT INFRINGEMENT, TRADEMARK AND TRADE DRESS INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

**Parties**

(1)     Plaintiff National Grange of the Order of Patrons of Husbandry (the "National Grange") is a national fraternal organization and nonprofit District of Columbia corporation located at 1616 H Street N.W., Washington, D.C. 20006.

(2)     Plaintiff California State Grange is the chartered California chapter of the National Grange.

(3)     The corporate Defendant, California Secretary of State Entity No. C0210454, is a California entity formerly named "California State Grange," now named "California Guild," doing business as "CSG" at 3830 U Street, Sacramento, California 95817.

(4)     Defendant Robert McFarland ("McFarland"), a California resident, is the principal officer of Defendant CSG, located and doing business at 3830 U Street, Sacramento, California 95817.  Defendant McFarland is the principal instrumentality for the wrongful actions of CSG alleged in this Complaint, and has personally authorized, directed and endorsed such actions in collaboration with individuals who may be named as parties.

**Jurisdiction and Venue**

(5)     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and Section 39 of the Federal Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1121.

(6)     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

**Related Cases**

(7)     This case arises from a conflict between the National Grange and Defendant CSG, whose principal, Defendant McFarland, formerly served as president of the National Grange's chartered California chapter.  The conflict has led to two previous actions, one in the California Superior Court of Sacramento County, the other before this Court, both arising from Defendants' refusal to relinquish the rights and privileges that are exclusively for the benefit of the chartered California chapter of the National Grange.

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

**State Court Litigation**

(8)     On October 1, 2012, the National Grange filed suit against Defendants and others in the California Superior Court for Sacramento County, seeking a declaration of the parties' property rights following the suspension of Defendant CSG's charter, in *National Grange of the Order of Patrons of Husbandry et al. v. The California State Grange et al.,* Sacramento County Superior Court Case No. 34-2012-00130439-CU-MC-GDS (filed Oct. 1, 2012).

(9)     On November 3, 2015, the California Superior Court preliminarily enjoined Defendants from selling, assigning, transferring, pledging, hypothecating, or encumbering any Grange assets possessed or controlled as of April 5, 2013, or any security interests in such assets during the course of this litigation, including property held in the name of inactive or defunct Subordinate Granges.  Copies of the November 3 ruling and subsequent orders of the California Superior Court are appended to this Complaint collectively as Exhibit 1.

(10)    On November 16, 2015, the California Superior Court entered judgment for the National Grange on all of its claims, declaring that CSG had no standing to hold or retain Grange property after the disaffiliation, that the re-chartered California State Grange, joining this action now as Co-Plaintiff, was lawfully reorganized in 2014, and that CSG is obligated to return all Grange property in its possession as of April 5, 2013, to the re-chartered California State Grange. Defendants are appealing that decision.

(11)    On April 8, 2016, the California Superior Court issued an order requiring Defendants to post an undertaking in the amount of $750,000 to stay enforcement of the court's final judgment, representing the amount of California State Grange assets and accounts dissipated by Defendants during the pendency of the litigation.  On May 1, 2016, Defendants filed a motion requesting an order allowing them to meet this requirement with assets and accounts held in the name of the California State Grange.  On June 1, 2016, the state court denied that motion.

**_National Grange I_**

(12)    After the parties' disaffiliation, Defendant CSG and its principal representative, Defendant Robert McFarland, continued to use the name "California State Grange."  Plaintiff the

National Grange accordingly instituted an action against Defendant CSG alleging trademark infringement under Section 32(1) of the Federal Trademark act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1114(1), federal unfair competition under Lanham Act Section 43(a), 15 U.S.C. § 1125(a), and related claims, in *National Grange of the Order of Patrons of Husbandry v. California State Grange*, Case No. 2:14-cv-00676-WBS-DAD (E.D.Cal.) ("*National Grange I*"). That action led to a decision by this Court dated July 14, 2015, granting summary judgment to the National Grange on its trademark and unfair competition claims, followed by a permanent injunction entered on September 30, 2015. *Id.,* Dkt. No. 86. The parties have cross-appealed the permanent injunction to the U.S. Court of Appeals for the Ninth Circuit, where Defendant CSG seeks a reversal on the merits and the National Grange appeals that portion of the injunction that limited relief to CSG's use of the exact word "Grange."

(13)    On April 20, 2016, this Court in *National Grange I* found that Defendant CSG was in "willful and deliberate" violation of the permanent injunction prohibiting it from use of the name "Grange" and granted the National Grange's motion for post-judgment injunctive relief. *Id.,* Dkt. No. 138. The Court found that:

- "Despite this court's permanent injunction barring defendant from using 'Grange,' defendant uses the name 'Grange' in public filings and registrations with the California Secretary of State and the County of Sacramento." *Id.* at 34-35.

- "Defendant's use of the name 'Grange' is visible to the public on the Secretary of State and County websites." *Id.* at 35.

- "Defendant and McFarland both represent their email addresses as 'president@californiagrange.org' on lobbying licenses with the Secretary of State that are visible to the public." *Id.* at 35.

- "Until at least February 4, 2016, defendant issued billing statements titled 'Grange Dues' and endorsed and deposited checks addressed to 'California State Grange.'" *Id.*

- "Its public business profiles on Google.com and ZoomInfo listed it as California State Grange and its website as www.californiagrange .org, even though defendant was free to correct or remove that information any time it wished. Defendant's agents have continued to represent that defendant is the 'California State Grange.' In December 2015, one of plaintiff's members called defendant's business number and asked if he had reached the "California State Grange"; the receptionist answered, 'Yes.'" *Id.*

- "There is also evidence that defendant's conduct has caused actual confusion among at least fifty of plaintiff's members regarding defendant's affiliation with plaintiff and the origin of its services. *Id.* at 35-36.

(14)   The April 20 order quoted above enjoined Defendant CSG and "its agents, affiliates, and assigns, and any party acting in concert with [CSG] or its agents, affiliates, and assigns," from (1) "conducting business using the name "Grange," including, but not limited to, soliciting dues using the name "Grange," collecting checks addressed to any entity whose name contains the word "Grange," endorsing checks using any name containing the word "Grange," using bank accounts or other financial accounts under any name containing the word "Grange," and endorsing, signing, or executing any document, lease, instruction, or financial instrument using any name containing the word "Grange"; (2) using "grange" in any domain name or email address or otherwise representing their domain name or email address as containing the word "Grange"; and (3) "referencing their past affiliation with the Grange or any other entity whose name contains the word "grange," including representing themselves to be the former California State Grange; successor to the California State Grange; or formerly known as, trading as, or doing business as the California State Grange." *Id.* at 38.

## **Background**

(15)   The National Grange, founded in 1867, is a nonprofit, nonpartisan, fraternal organization that advocates for rural America and agriculture.  Rooted in grassroots activism, family values, and community service, the National Grange is part of more than 2,100 hometowns across the United States.  The National Grange provides support for stewardship of America's natural resources; education, literacy, and local community development; promotion of safe and properly labeled food products; advocacy on behalf of farmers and rural Americans; and organization of member-owned cooperative and mutual business enterprise and other member services to support agricultural America.

(16)   On July 15, 1873, the National Grange created the California State Grange as its affiliated state-level chapter, which was incorporated with the California Secretary of State in 1946.  As a chartered affiliate, it is the function of the California State Grange to collect dues

1    from the local California Granges, to turn over a portion of those dues to the National Grange,

2    and to exercise other functions, *e.g.,* disposing of assets owned by the California State Grange,

3    writing and cashing checks on the account of the California State Grange, organizing and

4    reorganizing local California Granges, presiding over the induction of new Grange members and

5    the installation of Grange officers, performing Grange rituals and using Grange paraphernalia in

6    such rituals, and, in general, functioning as a Grange.

7            (17)    Defendant McFarland was elected as the leader of the California State Grange in

8    2009.  In 2012, while CSG was still an affiliated, chartered chapter of the National Grange,

9    disputes arose concerning CSG's failure to adhere to the rules of the National Grange.  Those

10   disputes led to suspension of the CSG as a state Grange.

**Defendants' Actions Since September 30, 2015**

12           (18)    Following this Court's issuance of the permanent injunction in *National Grange I,*

13   beginning in October 2015, Defendants began to flood the California Granges with false

14   representations that the California Granges would lose their tax-exempt status and suffer other

15   consequences, including federal investigation and possible imprisonment, if they "disaffiliated"

16   from the Defendants' organization.  At the same time, they removed the content appearing on the

17   former California State Grange website at www.californiagrange.org, and copied it onto a new

18   website at www.csgunited.org, which was materially identical to the former California State

19   Grange website down to the appearance of an identical logo:

| **California State Grange Logo** | **Defendants' New Logo** |
|:---:|:---:|
|  |  |

25           (19)    The logo illustrated above, as well as the content and appearance of the California

26   State Grange website at www.californiagrange.org, were recognized designations of the

27   California State Grange, all of which belonged to the National Grange pursuant to Article XVIII

28

of the By-Laws of the National Grange, Paragraph 4.18.1(A), which provides that "[a]ll registered and non-registered trademarks, logos, _copyrights_ and other intellectual property related to, used by and associated with, the Order are the _legal_ _property_ _of_ _the_ _National_ _Grange._"

(20)    CSG's advertisements and representation about its history and goodwill on its new website at www.csgunited.org, illustrated as follows, were copied verbatim from the former California State Grange website except for the substitution of "CSG" in lieu of "California State Grange," and represented that:

> The CSG . . . is the _oldest_ _agricultural_ _organization_ _in_ _California,_ _started_ _in_ _1870_.
>
> \*              \*              \*
>
> Cities and townships have grown up around _our_ rural halls and the CSG has evolved into a community service organization with _10,000_ _members_ _and_ _206_ _chapters_ _across_ _California_.  CSG community halls are often the center of their community, providing opportunities, culture and education, entertainment, emergency shelter, and  a meeting place where new friends are made and old friends are cherished.
>
> \*              \*              \*
>
> The CSG has lobbyists in Sacramento and boasts a _long_ _history_ of successful legislative advocacy.
>
> \*                      \*                              \*
>
> The CSG was the _first_ _organization_ to support and promote women as equal voting members.
>
> We find ourselves on the threshold of a CSG Renaissance in California. In these uncertain times our members find comfort and security by returning to our roots and reaffirming principles and goals _set_ _by_ _the_ _founders_ _140_ _years_ _ago_. [Emphasis added.]

(21)    The Defendants' representations on their website at www.csgunited.org, quoted above, are false, because (1) the California State Grange, not CSG, is the oldest agricultural organization in California; (2) cities and townships have grown up around the California Grange rural halls, not those of CSG; (3) the California State Grange, not CSG, has evolved into a community service organization with 10,000 members and 206 chapters across California, or had done so until it was damaged by the defendants' actions described below; (4) the California State Grange, not CSG, boasts a long history of successful legislative advocacy; and (5) the California State Grange, not CSG, was the first organization to support and promote women as equal voting members.

(22)    In some of their communications, Defendants display a supposed "disclaimer" that purports to disavow any affiliation with the National Grange but omits any reference to the

California State Grange.  The "disclaimer" reads, "We are not affiliated with the National Grange or the Grange of the State of California's Patrons of Husbandry Chartered."  However, the name "Grange of the State of California's Patrons of Husbandry Chartered" is unknown to the California Granges.  Plaintiff's California chapter was required to create a corporation with this name in 2014 because Defendants refused to relinquish their corporate registration in the name "California State Grange" on file with the California Secretary of State.

(23)    Since the permanent injunction in *National Grange I,* Defendants have used their new website at www.csgunited.org, which was copied from the former California State Grange website at www.californiagrange.org, to misappropriate the history and goodwill of the California State Grange.  In addition to the examples cited above, Defendants' membership brochure, which is copied from the membership brochure previously appearing at www.californiagrange.org except for substitution of the name "CSG" for "California State Grange," states:

> *The CSG is a grass roots organization that began in 1870.* Rising from the fields and farmlands, we gathered on common ground to support each other, work together, and honor traditional values.

> Today, the CSG has evolved into a community service organization *with 10,000 members and 206 chapters across California*. The halls are often the center of their community, providing culture, entertainment, and education, and a place for new and old friends to meet.  [Emphasis added.]

(24)    In addition to their misappropriation of the history and goodwill of the California State Grange, Defendants' new membership brochure bears the following similarity in appearance to the former membership brochure of the California State Grange:

**CSG Membership Brochure**          **California State Grange Membership Brochure**

          

(25)     Defendants' new home page at www.csgunited.org similarly misappropriated the history and goodwill of the California State Grange, and as recently as May 2016, bore the following resemblance to the former California State Grange website at www.californiagrange.org, which the Court found was likely to cause confusion, mistake and deception by reason of its citation to Grange history:

**www.californiagrange.org**          **www.csgunited.org**

 

(26)     In addition to misappropriating the history and goodwill of the California State Grange, the "History" page at Defendant's new website at www.csgunited.org bore the

1  following resemblance to the previous "History" page of the former California State Grange at

2  www.californiagrange.org as recently as April 2016:

3  **www.californiagrange.org**          **www.csgunited.org**




4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

19  (27)  In the "News Archive" section of their new website at www.csgunited.org,

20  Defendants posted links to historical publications of the California State Grange as though they

21
22
23
24
25
26
27
28

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

1  were publications of the CSG, not the California State Grange.  As of April 2016, these links

2  appeared on Defendants' "News Archive" page as follows:



Defendants' "Multimedia" page at www.csgunited.org similarly represented audiovisual

presentations of programs historically conducted by the California State Grange as though they

were presentations by CSG.

(28)    As recently as April 2016, the "Photos" page on Defendants' new website at

www.csgunited.org/news/photos.html, provided a link to Defendant McFarland's personal photo

site, where McFarland continued to claim:

> Most of my photos are in the Grange gallery.  I've worked for the California State Grange since 2006.  In 2009, I was elected as the State President.

Following this Court's order dated April 20, 2016, McFarland edited his personal photo site to

read as follows:

> Most of my photos are in the Grange gallery.  I started working for the _California State Grange_ in 2006.  In 2009, I was elected as the President.  Now, no longer affiliated with the National Grange or Grange of California Order of Patrons of Husbandry, _the organization is known as the CSG_.  [Emphasis added.]

(29)   Following the permanent injunction in *National Grange I,* Defendants also continued to represent themselves as authorized representatives of the California Grange Foundation, a 501(c)(3) nonprofit California corporation created by the California State Grange under the direction of the National Grange in 1992.

(30)   A juxtaposition of Plaintiff's historical website at www.csgfoundation.org and Defendants' new website at the same Internet address revealed the following confusing similarity as of December 2015 and as recently as April 2016:

**California Grange Foundation Website**   **CSG Foundation Website**

 

(31)   Defendants' new "CSG Foundation" website, as of December 2015 and as recently as April 2016, included the following description of a 2014 Kris Kristofferson concert, which

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

Defendants credited to CSG but which was actually sponsored and organized by the California State Grange (yellow-highlight added):

## Events

### Kris Kristofferson Rocks The House

The CSG Foundation's Hemp Aide Concert featuring Kris Kristofferson was a roaring success. Kristofferson, along with opening band John Trudell and Bad Dog, performed to a sold-out audience at the historic Crest Theater on February 22, 2014.



Kris took the stage, just a man and his guitar and quickly showed he could still captivate an audience with his classic hits, even playing requests shouted by excited fans. Throwing in stories between sets, it was a real treat to get a glimpse into the past of an entertainment legend. Just a few weeks prior to his Hemp Aide performance Kristofferson was honored with a lifetime achievement award at the Grammys. The CSG Foundation was grateful to have the support of such an iconic performer, supporting both the foundation and Hemp.

Along with the CSG Foundation, the Hemp Aid concert was sponsored by Dr. Bronner's, Nutiva and Hempmedspx. It was also co-sponsored by a variety of other great organizations. After the show, Kristofferson generously donated his time for a meet-and-greet backstage where many adoring fans were able to talk with him and snap photos.

Special thanks to Kris Kristofferson and his family for donating their time and energy to support such a great cause. And thanks to everyone who helped make this event such a huge success.

(32)     While Defendants changed the name "California State Grange" to "CSG" on their new website at www.csgfoundation.org, the bookmarks for the website remained visible to the public and continued to display the name "California State Grange," as did printouts of the website, appearing as follows (yellow highlight added):



(33)   In anticipation of the permanent injunction in *National Grange I,* Defendants registered the names "California State Guild" and "CSG" as fictitious business names with Sacramento County under the name "California State Grange." The letters "CSG" have been recognized by the California Granges for generations as equivalent to the "California State Grange."

(34)   On December 5, 2015, a California Grange member sent an email to other Grange members, explaining his decision to remain in the California State Grange. In response, Defendant McFarland sent an email to Grange members threatening them with "harm" if they failed to pay their Grange dues to McFarland ("I don't want to see any member harmed."). His email adds, "[T]he CSG will continue to defend _our_ members, _our_ property and _our_ rights," and concludes, "Please call me before taking any actions of disaffiliation." (Emphasis added.)

(35)   On December 6, 2015, Defendant McFarland sent the following email to the California Granges, claiming that the National Grange was attempting to expropriate property from the local Granges and citing efforts by "Komski's organization" to "strong arm you into joining their organization . . . ":

> If CSG gives up the fight now, the fear, and the reality, is that National Grange will point to this decision for years to come as authority for why it may revoke charters and take your property without recourse. More to the immediate point, National Grange and Mr. Komski will try to strong arm you into joining _**their organization**_ under threats that otherwise your property will be seized. In sum, we are seeking to protect the property rights of _**our members**_ throughout California. This is why we filed the appeal. [Emphasis added.]

Communications of this nature from Defendants to the California Granges continue at the present time.

(36)   In further correspondence to the California Granges dated December 6, 2015, Defendant McFarland responded to a California State Grange member who stated that "to keep our [Grange] hall... we need to pay our dues to the Reorganized Calif[ornia] State Grange now," by claiming, falsely, that this statement was "nothing more than a scare tactic," and stated, "Please, read your Articles of Incorporation [and] bylaws," *id.,* even though the California Granges are bound to the California Grange and the National Grange in their articles of

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

1  incorporation and bylaws, not to CSG.  Communications of this nature from Defendants to the

2  California Granges continue at the present time.

3       (37)  On December 8, 2015, McFarland announced in a Grange meeting that he had

4  "reorganized the Ranchitos [sic] Grange.  Responding to questions about his authority to take

5  executive action as a representative of the California State Grange, McFarland stated, "Yes, I

6  reorganized the Ranchitos [sic] Grange.  _Under State Grange by-laws I have the authority to do_

7  _that and I don't need the executive committee's approval_."

8       (38)  When asked at the December 8 meeting why he would reorganize Ranchito

9  Grange with people over 500 miles away from Los Angeles county, Defendant McFarland

10  responded, "I don't think it matters where it is."  However, the location matters because the

11  Ranchito Grange was an inactive Grange that had divested the real property used for its Grange

12  hall and other assets.  The real Ranchito Grange no longer exists except for its ownership of more

13  than $300,000 held in trust at Morgan Stanley in the name "California State Grange."  On

14  information and belief, McFarland's plan was to induce a transfer of the account to a purportedly

15  reconstituted but in fact spurious "Ranchito Grange," which would then "donate" that money to

16  Defendant McFarland for his own use free of any trust restrictions.

17       (39)  At the December 8, 2015 meeting, Defendant McFarland was asked whether he

18  planned to divert this $300,000 to the reorganized Ranchito Grange.  He responded "yes."

19       (40)  Defendant McFarland was asked at the same meeting, "Are you at the CSG still

20  accepting local Grange dues?"  He responded, "Absolutely."  He added, "the CSG has been

21  around since 1873."  He then threatened the California Granges who pay dues to "Komski's

22  organization" that they "risk violation of their tax status and could be subject to imprisonment."

23  _Id._  Communications of this nature from Defendants to the California Granges continue at the

24  present time.

25       (41)  In a bulletin appearing as follows dated December 11, 2015, Defendants warned

26  the California Granges about "legal consequences" if they "disaffiliate" from the defendants'

27

28

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

organization and "join the Komski organization," refusing as always to designate the latter by its actual name, the California State Grange (yellow highlight added):



Communications of this nature from Defendants to the California Granges continue at the present time.

(42)    In an email dated December 13, 2015, responding to a California Grange member who challenged his authority, McFarland states:

> . . . I am responsible to the members of the CSG and the unanimous decision to continue to defend ourselves while seeking reconciliation.
> \*                          \*                          \*
> You wrongly suggest the Komski organization is the same organization as the CSG when you know that is not so.  \*    \*    \*
>
> [T]he court rulings say . . . that the _CSG is the original organization, retaining our history, membership and corporation._  The court proceedings established that _the community granges are NOT a part of the Komski grange_ - unless they choose to be.
>
> To be clear, _disaffiliation would LEGALLY require a bylaws change_ (2/3rds majority vote at a regular meeting - not a special meeting - after all members have been duly noticed 30 days in advance).  If you want to carry the argument further, you could use the rulings of the lower court to require, per the bylaws, that _the State President (not Komski) must approve bylaws changes._
>
> Based on the best information we have to date, _for a [G]range to disaffiliate it will also require forming a new corporation and applying for a new application for nonprofit_

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

*status* (Komski's organization does not have it's C-10 yet).  All of this takes time and money. Meantime, the now commercial local grange is holding nonprofit assets (anyone can challenge this) that cannot be transferred or distributed until the corporation dissolves. We're learning more each day about this complicated process.

\* \* \*

Another reality occured [sic] to us last Thursday  *A grange that becomes part of the Komski organization joins as the plaintiff against us in court*, and their dues will be used to continue Komski's fight against the rest of us who have chosen to stay together.  How's that for following your oath"  "I will not knowingly wrong or defraud a Brother or Sister... or allow it to be done by another."

So, I've heard grangers say they do not want us to continue the lawsuits.  Well, joining the Komski grange and giving him money to continue his lawsuits against us betrays themselves and the rest of us.

\* \* \*

When this trail of tears ends, we *will still have a vast majority of [G]ranges in California* standing together, protecting our rights and property.  We will just be further divided. [Emphasis added.]

Communications of this nature from Defendants to the California Granges continue at the present time.

(43)    Each of Defendants' representations quoted in the preceding paragraph is false because:

(a)    The California State Grange, not CSG, is the original organization and retains its history and membership;

(b)    The California Granges do not need to "disaffiliate" with the CSG because they are affiliated with the California State Grange, not CSG;

(c)    To maintain its identity as a Grange, changes in the bylaws of a California Grange must be approved by the California State Grange, not CSG;

(d)    As the California Granges are already members of the California State Grange and are not required to "disaffiliate" from CSG in order to "join" the California State Grange, it follows that a California Grange has no need to form a new corporation or file a new application for nonprofit status; and

(e)    The Defendants' prediction that they "still have a vast majority of Granges in California" incorrectly assumes that the Defendants are authorized to represent the California Granges.

(44)   On December 15, 2015, McFarland warned the Executive Committee of a California Grange about the "potential consequences" of making "any changes to the status quo," including "personal liability" for "unlawful distribution of assets:"

> As you may know, we represent CSG United ("CSG").  We understand that you are currently considering whether to *change your membership affiliation*  from its currents status as a member of CSG, to membership with *The Grange of the State of California's Order of Patrons of Husbandry, Chartered*.  [McFarland's nomenclature for the "California State Grange."]

> We strongly advise you to make sure you are fully informed of the *potential consequences* before reaching a decision.  Please, consider the following:

> Currently, your corporation is under the umbrella of the CSG.  *Your principal governing document, your Articles of Incorporation, define your association with the CSG,* but there is no reference whatsoever connecting your corporation to any other corporation.

> *Disassociating from the CSG may affect your corporate nonprofit status.  You will no longer be a 501(c)(8) nonprofit organization sanctioned under the CSG umbrella*.

> In addition, a *change of organizational structure* may be deemed by taxing authorities to be a change in ownership of any real property held by your corporation which could trigger reassessment of its value and result in increased property taxes.

> As an officer and director of a non-profit mutual benefit corporation, you are governed by your Articles of Incorporation and the provisions of the California Corporations Code (the "Code") and owe fiduciary duties to your corporation and its members. A failure to comply with these provisions or to meet those fiduciary duties could subject them to *personal liability*.

> As an officer and director of a non-profit mutual benefit corporation, you could be held personally liable for authorizing an *unlawful distribution of assets* of the corporation in violation of the Code.  Section 7236 of the Code provides that a director of a corporation "shall be jointly and severally liable" for approving "the making of any distribution contrary to Chapter 4 (commencing with Section 7410)." See also California Corporations Code §§ 7420 and 8721.  *   *   *

> We strongly urge you to consult with your own independent legal counsel about the *potential consequences* of a change of membership for your corporation.  Accordingly, we strongly caution against making any *changes to the status quo* before such a final determination is made by the Court.  [Emphasis added.]

The statement is false because the "status quo" to which McFarland is referring is that the California Granges are members of the California State Grange, not CSG.  Communications of this nature from Defendants to the California Granges continue at the present time.

- 18 -

(45)   Another example of Defendants' misrepresentations appears in the following direct mail solicitation distributed to the California Granges as recently as December 28, 2015 (yellow highlight added):



(46)   The direct mail solicitation illustrated in the preceding paragraph was delivered to California Grange members in an envelope with the return address of the name "California State Grange," appearing as follows (yellow highlight added):



FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

1

2

3

(47)     On January 4, 2016, it came to Plaintiffs' attention that CSG was displaying the email address info@californiagrange.org as follows on its Facebook page to further create the appearance of a connection to the California State Grange (yellow highlight added):

4

5

6

7

8

9

10

11

12

13

14



15

16

(48)     Based on their false claim of authorization to represent the California Grangers, Defendants are – or were, until they were enjoined from doing so by this Court's order dated

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

1 April 20, 2016, in *National Grange I* - collecting Grange dues, as illustrated in the following

2 invoice (yellow highlight added):



16 (49)   The confusion, mistake and deception caused by Defendants' misrepresentations is

17 reflected in a cancelled check from the Soloman Hills Grange, dated October 28, 2015, written to

the "California State Grange" and endorsed by the defendants in the name "California State

Grange."   A copy of the cancelled check appears as follows (yellow highlight added):



(50)    On December 7, 2015, the Internet domain name CGFOUNDATION.ORG was

registered anonymously and subsequently used as a platform for the dissemination of

disinformation and false threats of consequences against California Granges who "disaffiliate"

from Defendants' organization and "join" the organization to which the defendants refer as

"Komski's organization" or "Mr. Komski."   Defendants never use the term "California State

Grange" except when referring to their authority to represent the California Granges.

(51)   Ownership of the website at www.cgfoundation.org is concealed by means of a so-called privacy shield or "proxy service," illustrated as follows (yellow highlight added):

```
Domain Name: CGCOALITION.ORG
Domain ID: D178790124-LROR
WHOIS Server:
Referral URL: http://domains.google.com
Updated Date: 2015-12-07T18:50:39Z
Creation Date: 2015-12-07T18:20:47Z
Registry Expiry Date: 2016-12-07T18:20:47Z
Sponsoring Registrar: Google Inc.
Sponsoring Registrar IANA ID: 895
Domain Status: clientTransferProhibited https://www.icann.org/
Domain Status: serverTransferProhibited https://www.icann.org/
Registrant ID: OTC1861085416
Registrant Name: On behalf of cgcoalition.org owner
Registrant Organization: c/o whoisproxy.com Ltd.
Registrant Street: Plaza Level,41 Shortland Street
Registrant City: Auckland
Registrant State/Province:
Registrant Postal Code: 1010
Registrant Country: NZ
Registrant Phone: +64.48319528
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: owner@cgcoalition.org.whoisproxy.org
```

(52)   Because ownership of the website is concealed, the public cannot determine which representations at www.cgfoundation.org are those of Defendants, which are those of persons acting in concert with Defendants, and which are those of California Grange members confused, mistaken and deceived by Defendants' representations.  However, all of the misstatements at the site necessarily fall into at least one of those groups, as they bear a transparent resemblance to those disseminated by Defendants in their other public statements, indicating, at a minimum, that Defendants have been successful in causing confusion, mistake and deception.

(53)   Typical of the advertising and communications disseminated by Defendants since the permanent injunction in *National Grange I* is a bulletin posted at www.cgunited.org on

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

1   December 14, 2015, which purports to provide authoritative answers to "Frequently Asked

2   Questions" from members of the California State Grange.  The document begins:

3

**COMMUNITY GRANGER COALITION**
*Providing news, resources and support*
*for the protection of community Granges.*
**FAQ's**
Frequently Asked Questions about your rights
as a Community of Grangers in California.
Brought to you by the Community Grangers Coalition.
For more information, visit www.cgcoalition.com
Rev. 1.0 (12/14/2015)

4

5

6

7

8        (54)     The "Frequently Asked Questions" page at www.cgcoalition.org resembles

9   Defendants' other communications since the permanent injunction in *National Grange I*.  For

10   example, it omits any reference to the "California State Grange" and designates it instead as the

11   "Komski's organization," or the "State of California's Order of the Patrons of Husbandry."

12        (55)     The FAQs page at www.cgcolation.org begins with a repetition of Defendants'

13   misrepresentation that they are defending the California Granges against actions taken by the

14   National Grange and refers to the National Grange as "trespassers":

15           Can the *Grange of the State of California's Order of the Patrons* of Husbandry shutter my
grange, change the locks and kick me out?

16

17           NO.  Three separate granges have talked to lawyers as has the Community Grange
Coalition with the same results.  There is no legal basis for coming on your  grange

18           property uninvited with the intention of changing your locks and kicking you out.  *This is
trespassing* and the advice is to call the local police.  Do not be fooled by a person with a
piece of paper in their hand.  This is a civil matter and the police will NOT enforce a

19           seizure of your property. *The police however will deal with trespassers*. [Emphasis
added.]

20

21   The statement is false because the California State Grange has taken no such actions and is not a

22   "trespasser."

23        (56)     Paragraph 2 of the FAQs page advises the California Granges to refrain from

24   paying their Grange dues to the California State Grange:

25           Does the *Grange of the State of California's Order of the Patrons of Husbandry* have the
right to dues from my grange for the past two years?

26

27           NO.  The monies earned since April 2013 belong the community granges and the CSG.  In
addition, the *lawsuit brought by TGSCOPH* only calls into question the assets of the CSG
main office and property at U Street in Sacramento.  The Court's Minute Order on the

28

> CSG's Demurrer* specifically says neither the National Grange or the Plaintiff's -in-Intervention joined local granges to the lawsuit. What this means is CSG's objection to adding local granges to the lawsuit was granted by the court. TGSCOPH has no rights to your revenues or the property entrusted to your grange. *** [Emphasis added.]

The statement is false because the California Granges are obligated by their bylaws to pay their Grange dues to the California State Grange.

(57)    Paragraph 3 of the FAQs page repeats the defendants' false warnings about tax consequences that the California Granges will suffer if they "join" the organization they call the "Grange of the State of California's Order of the Patrons of Husbandry:

> Will joining the Grange of the State of California's Order of the Patrons of Husbandry affect my Tax Exempt Status?
>
> YES. Under the current situation, the status of the Grange of the State of California's Order of the Patrons of Husbandry (TGSCOPH) is that of a 501(c)(5). This is a nonprofit designation used primarily for a labor union. It is not fraternal, nor does it allow tax deductible donations.
>
> Most community granges are either a 501(c)(8), which allows tax deductible contributions and is fraternal in nature, or a 501(c)(10), which is also a fraternal organization. This means that _once moved over, your (c)(8) status could be in question and you may be subject to taxable income_. The effort to change over to a (c)(5) can be costly, time consuming, and a non-typical activity that may trigger other issues. Normally, the IRS expects organizations to change the function of the organization, not their tax exempt classification.
>
> Additionally, TGSCOPH's status is said to be changing their status through filing a (c)(10) in October 2015, however this may throw up red flags with the IRS, may take minimum of 240 days and may NOT guaranteed to be granted. This creates potential time period in having your grange operating as a for profit business. It is a gamble that the new tax status will be granted to TGSCOPH. Do not gamble with your Grange's tax exemption status. Ask the hard questions: ask for the Letters of Determination or the filings for both the state and IRS. [Emphasis added.]

The statement is false now because the chartered California State Grange has obtained approval of its 501(c)(10) status, and was false when made because Co-Plaintiff California State Grange's application was for 501(c)(10) approval, not 501(c)(5) approval, and there was no basis for the statement that the approval process would take a "minimum of 240 days" or that the California Granges would "gamble" with their tax statements by "disaffiliating" from the defendants' organization.

1    (58)    Paragraph 4 of the FAQs page threatens the California Granges with additional

2    consequences of "disaffiliation" from the defendants' organization:

3        Should I check on the effect on my grange's tax exempt status if I do decide to change
4        affiliation?

5        YES. You have the right to know what is the status of the organization you might be
         joining.

6        All tax exempt status and financial information is public knowledge due to the break
7        organizations are getting in terms of not paying taxes on their income.  You should ask the
         organization you are thinking about joining to present you with a copy of their tax exempt
8        filing papers and find out what the plan is for maintaining your tax exempt status for your
         organization. You should ask for both the State and Federal status, called the letters of
9        determination.

10       There is a 30 day max time limit for this information to be made available to you.  If you
         are refused information or if the reply is "That is private information, " you should press
11       to see the information. _If you find you cannot get this information, please contact the_
         _Community Grange Coalition for help and assistance._ [Emphasis added.]

12   The statement is false because it represents that the California Granges should check on their tax

13   exempt status if they "change affiliation" and assumes that the California Granges are "affiliated"

14   with the CSG.

15       (59)    Paragraph 5 of the FAQs page warns the California Granges not to accept

16   assurances from anybody to the contrary, at the risk of "committing fraud":

17       I have been told my grange is OK with regards to our tax exempt status and we have a
         current active status with the State of California. Is this enough to ensure my grange's tax
18       exempt status?

19       NO. There is a lot of confusion about being a nonprofit vs being a tax exempt corporation.
         _You must first attain nonprofit status with the state, then apply for tax exempt status from_
20       _the IRS._  You can have nonprofit status with the State, and yet, not be a tax exempt entity.
         Therefore _you would be required to pay income tax on your yearly revenue._
21
         Please note, if you are operating as a tax exempt organization and you do not have that
22       official designation, (letters of determination) _you are committing fraud and may be_
         _subject to fines and other not good side effects._ It is so important to get the details of your
23       current status with the State and the IRS.  *   *   *

24       It a is very straightforward process to look up your Grange name.  It is much harder to
         find your exempt status on the IRS database.  _Please contact the Community Grange_
25       _Coalition for help in finding your current IRT status_.  [Emphasis added.]

26   The warning is false because the California Granges only need to attain nonprofit status or tax

27   exempt status if they disaffiliate from the California State Grange.  The California Granges

28

                                    - 26 -                    FIRST AMENDED COMPLAINT
                                                             CASE NO.: 2-16-CV-00201-WBS-AC

1    cannot "disaffiliate" from CSG because they are not *affiliated* with CSG.  They may affiliate with

2    CSG if they choose to do so, but not in their capacity as California Granges, and not without

3    changing the status quo.  Defendants' misrepresentations to the California Granges on this point

4    are not only false and deceptive, but damaging to the California Granges because they tend to

5    induce the very harm that they purport to be warning about.

6        (60)    Paragraph 6 of the FAQs page expressly holds out Defendants as the California

7    State Grange, citing the records of the California Secretary of State:

8        Is it simple to transfer association to another organization?  Will my by-laws be affected?
         What is an Article of Incorporation?

9

10       NO.  In the state of California, nonprofit corporations are bound by both California State
         laws of Incorporation and by the by-laws filed with State.

11       The Articles of Incorporation are a State Document that declares the intent of the
         corporation to engage in nonprofit activities and also may associate with a parent
12       organization.  *In the case of the CSG, articles of incorporation associate the entity called
         the California State Grange, INC. There is only one legal entity named the California*
13       *State Grange, INC. Although the California State Grange is enjoined from using the name
         Grange in its advertising and general use, the California State Grange continues to be a*
14       *legal entity and is associated with all community grange Articles of Incorporation.*

15       The same goes with the individual Grange By-Laws.  These two documents do not say
         affiliated with "The Grange of the State of California's Order of the Patrons of
16       Husbandry."  *The by-laws must be amended and the Articles of Incorporation must be
         changed, however, changing Articles of Incorporation may mean forming a NEW*
17       *organization, reincorporating and refiling for nonprofit status.* This can be complicated
         by other factors.  [Emphasis added.]

18

19   The statement is false for the reasons stated above.

20       (61)    Paragraph 7 of the FAQs page repeats the false statement that California Granges

21   must amend their by-laws to disassociate from the defendants and adds that doing so requires the

22   approval of the "President of the California State Grange, a.k.a. CSG":

23       How do I change my Grange By-Laws?

24       Grange By-Laws are legal documents carrying the weight of law designed to outline the
         governance of an organization/corporate entity.
25
         The current Grange by-laws clearly state what steps must be taken to change them: * * *
26
         •  *Once the documents have been amended, they must be sent to the President of*
27          *the California State Grange, a.k.a. CSG, for final approval.*

28

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

This has been Grange law for decades and it also reflects California State Corporation laws.

There may be some additional processes needed depending upon specific local circumstances. *Until these steps are taken, a Grange has NOT officially changed their bylaws, and any changes put into effect without this process are null and void and may put the grange in violation of fraternal law as well as California Corporate Law.* [Emphasis added.]

The statement is false for all the reasons stated above in addition to its express designation of CSG as the California State Grange (documents must be "sent to the President of the California State Grange, a.k.a. CSG. . .").

(62)   On December 28, 2015, Defendant McFarland sent an email to the California Granges, again warning them falsely that they will need to amend their by-laws as a consequence of "jumping ship":

. . . If you are going to follow your bylaws, *disaffiliating from the CSG would be a bylaws change* requiring two votes:  to be voted on at a regular meeting, and voted on again at a second regular meeting after giving all members a 30 notice that a bylaws change has been proposed.  Both votes require a 2/3rd majority for adoption.  Then, the bylaws change must be presented to the State President for approval.

*In addition to the bylaws procedure, your articles of incorporation would need to addressed.*  Nearly all articles for local chapters carry language that establishes a legal relationship between them and our organization, and provide that the organization will conform to the bylaws of the CSG, "of which this organization is a member."

Please call me if you need more information.  *It is important that any grange contemplating jumping ship be aware of the consequences.*  [Emphasis added.]

Communications of this nature from Defendants to the California Granges continue at the present time.

(63)   Another email sent by Defendant McFarland to the California Granges on December 28, 2015, falsely represents that the relationship between members of the California State Grange and Defendants is governed by the members' articles of incorporation and bylaws:

*Look not only to your bylaws but to your articles of incorporation that form the relationship between community chapters and the CSG.* [Emphasis added.]

Communications of this nature from Defendants to the California Granges continue at the present time.

(64)     Yet another email sent by Defendant McFarland to the California Granges on December 28, 2015, repeats:

> Understand, _any_ _grange_ _that_ _disaffiliates_ from the CSG and joins Mr. Komski's organization _must_ _abide_ _by_ _the_ _new_ _bylaws_. [Emphasis added.]

Communications of this nature from Defendants to the California Granges continue at the present time.

(65)     On December 29, 2015, an email was distributed to the California Granges by a Grange member confused, mistaken or deceived by the defendants' misrepresentations, stating:

> I don't know how to make this clearer.  The bylaws and the articles of incorporation for almost every grange in California as well as your nonprofit status are a contract between your grange and the California State Grange.  Disaffiliating, leaving the _California_ _State_ _Grange_ _(presently_ _known_ _as_ _the_ _CSG)_ requires a by law [sic] change as you would be reaffiliating with THE GRANGE OF THE STATE OF CALIFORNIA'S ORDER OF PATRONS OF HUSBANDRY, CHARTERED.  Under California corporations code, IRS code and Franchise Tax code _the_ _California_ _State_ _Grange,_ _Inc_ is _the_ _CSG_ not THE GRANGE OF THE STATE OF CALIFORNIA'S ORDER OF PATRONS OF HUSBANDRY, CHARTERED.
>
> _Komski_ _is_ _lying_ _when_ _he_ _states_ _he_ _is_ _the_ _California_ _State_ _Grange_ _and_ _he_ _is_ _illegally_ _using_ _that_ _name_ _and_ _committing_ _fraud_ _when_ _referring_ _to_ _the_ _Komski_ _group_ _as_ _the_ _California_ _State_ _Grange,_ _Inc_. He is persuading you to commit fraud as well. Further, as per most bylaws of California Granges the change requires the approval of the _President_ _of_ _the_ _California_ _State_ _Grange,_ _Inc;_ _Bob_ _McFarland_.  Beyond that most California granges who are part of the California State Grange non profit status will loose [sic] their non profit status and become a for profit business.
>
> For people who are concerned about my using the name California State Grange to describe the CSG.  _I_ _am_ _not_ _using_ _the_ _name_ _California_ _State_ _Grange_ _to_ _describe_ _the_ _CSG,_ _I'm_ _using_ _the_ _description_ _from_ _the_ _California_ _Secretary_ _of_ _State_ _for_ _the_ _California_ _State_ _Grange_, so toed [sic] please sue the Ca SOS for using the grange trademark.
>
> I continue to be dumbfounded how something this simple continues to be misunderstood, and I understand the _Ed_ _Komski_ _group_ _makes_ _up_ _lies_ _such_ _as_ _owning_ _the_ _corporate_ _name_ _California_ _State_ _Grange_ _and_ _everything_ _accomplished_ _under_ _that_ _name_ _for_ _the_ _last_ _140_ _years._ That is just as absurd as a woman named Jan Smith marrying Joe Jones and changing her name to Jan Jones and assuming all her credit card debt under her name Jan Smith was erased because she changed her name. This isn't rocket science. [Emphasis added.]

Communications of this nature from disaffected members of the California Granges confused, mistaken or deceived by Defendants' misrepresentations, continue at the present time.

(66)   In response to the email quoted in the preceding paragraph, another California Grange member stated:

> David, thanks for this information to all, I have no problem understanding it as I have worked with it and gone to the California Secretary of State and all the other sites for California.  Your [sic] right it is not rocket science All of you who are in doubt, call these entities, go on these sites find out for your self [sic] that _Komski_ _and_ _his_ _talking_ _heads_ _are_ _all_ _lying_ _to_ _you_.  [Emphasis added.]

(67)   On or about January 3, 2016, the following warning was posted anonymously at www.cgcoalition.org with more false threats about tax consequences that the California Granges will purportedly suffer from disassociating from Defendants' organization:



Communications of this nature from the Defendants to the California Granges, and from members of the California Granges confused, mistaken or deceived by Defendants' misrepresentations, continue at the present time.

(68)   On January 6, 2016, Plaintiffs received a copy of an email sent that date by the Secretary of the Woodbridge Grange, announcing that "President Bob McFarland will be at our Grange hall to install our 2016 officers at 6:30 p.m."  The email states:

Dear 2015 Woodbridge Grange Members,

If you are interested in being a Woodbridge Grange member in 2016 your dues are due by 01-12-16, next Tuesday's meeting.  Please bring your dues to the meeting.  * * *

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

If you are not planning to continue being a member, please send an email to Tim Christensen by 01-10-16, Sunday.  Tim is creating our "2016 Membership Directory" and he would like to make it available to our members as soon as possible.  * * *

*01-12-16, next Tuesday's meeting: President Bob McFarland will be at our Grange hall to install our 2016 officers at 6:30 P.M.  This is an honor to our Grange; please attend the installation if you can.*  Our meeting will start as soon as the installation is completed.  We are not having a potluck.  [Emphasis added.]

(69)    Plaintiffs later discovered that the following defamatory content had been posted at

http://cgcoalition.org/2015/12/15/who-is-ed-komski on December 15, 2015, falsely accusing the

President of Plaintiff California State Grange of lying when he claimed to be the authorized

representative of the California State Grange:



Communications of this nature from Defendants to the California Granges continue at the present

time.

(70)    In addition to all of the above, Defendants are using a "Google Group" named

"GREENGRANGES@GOOGLEGROUPS.COM to falsely represent CSG as the authorized

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

1   representative of the California Granges and arbiter of questions arising under the California State

2   Grange Bylaws.

3        (71)    An example of actual confusion, mistake and deception resulting from Defendants'

4   successful efforts to deceive the California Granges appears in an email dated January 17, 2016,

5   from a California Grange member to "Grange Leaders and Members," stating:

6
7
> It has recently come to our attention that you are not being told the truth about the need to immediately acknowledge and *join the newly chartered California Grange led by Ed Komski*. [Emphasis added.]

8   Communications of this nature from members of the California Granges confused, mistaken and

9   deceived by the Defendants' misrepresentations continue at the present time.

10        (72)    The next day, January 18, 2016, the same Grange member sent a similar email to

11   other Grange members, stating mistakenly:

12
13
14
15
16
17
> \* \* \* I think if you look through the court judgements [sic] you will find that Komski's group and National won two things in the first round. They won a Trademark suit for the capitalized word "Grange" and they won an ambiguous property settlement that has not been determined.  Both of those judgements are in appeal and the later [sic] *can't be acted on without your Grange's consent* until the court case is settled.  *And it's a real can of worms if you decide to go that direction.* There are no Short cuts around the Law. Whether it be State and Federal Law or Grange Law. And, The National Grange Digest of Laws states that we must also follow State and Federal Laws. *The only way Komski can take your Grange right now is if you let him.* I know Komski says that they won, but there was so much evidence that wasn't heard or was ignored in round 1 that *there is a high probability of CSG winning all of the appeals.* [Emphasis added.]

18        (73)    Responding to these, McFarland sent an email dated January 18, 2016, to the

19   California Granges endorsing the misstatements quoted above and rendering further false

20   accusations:

21
22
23
24
> Mr. Komski makes up the rules as he goes along to suit his purpose. Mr. Komski's purpose for continually setting new deadlines every month and making threats and demands that you pay your dues to him (*even for periods of time you have not been associated with his new organized)* [sic] is to try and cripple the CSG financially *so we can no longer defend your property and your rights*. Instead, he will use your own dues to establish in Court that you are merely "guests" in you hall and that the National Grange owns it. \* \* \*

25
26
> Your members own your hall. Mr. Komski cannot take it from you – unless you give it to him. That is what you will be doing *if you sign his new subordinate bylaws.* If you doubt this, give me a call and I will gladly explain it to you. \* \* \* [Emphasis added.]

27

28

1    This email concludes with false threats and misrepresentations about the purported tax

2    consequences that the California Granges will suffer upon "disaffiliation from the CSG":

3    
4    
5    

> Efforts toward reconciliation have been slowed by several granges *leaving the CSG and joining the Komski's organization*, claiming they are somehow going to miraculously vote him out of office in June. Mr. Komski is fully aware of this scheme and he will find a way to prevent this from happening.

6    
7    

> Most recent research done on behalf of our members confirms what we have been cautioning granges about. *Upon disaffiliation from the CSG, a reassessment of property taxes is almost assured* – unless you get lucky and your County Assessor is unfamiliar with the law.

8    
9    
10   

> Mr. Komski does not currently have a group tax exemption that will accommodate any granges joining his organization. *Depending on your individual tax status, you may or may not be able to make the transition from the CSG to Mr. Komski's organization*. In all cases, it cannot be accomplished without effort, time and cost.  We *highly recommend you investigate with a professional tax consultant or attorney*.

11   
12   
13   

> One thing is certain, and that is nothing is certain. *We have tried to caution officers of individual chapters* from making blind decisions that may put in question their fiduciary responsibilities. *The CSG must report these actions to the various regulatory agencies*, or we can be held responsible, fined and even face criminal prosecution.

14   
15   

> *Tax laws are tough,* especially when you are claiming to be a nonprofit organization, and with matters dealing with the public trust. We've studies all of this and continue to do so. Have you? You may feel like you are being threatened. With apologies, if that is what it takes to get you to look into these matters, it is worth it.  [Emphasis added.]

16   Communications of this nature from Defendants to the California Granges continue at this time.

17          (74)    Defendants' use of the name "CSG" to cause confusion, mistake and deception is

18   illustrated in an *ex parte* application filed on March 24, 2016, by the Regents of the University of

19   California Davis in response to Defendants' solicitation of rent payments owed by the University

20   for the lease of property owned by the California State Grange.  In July 2002, the Regents entered

21   into a lease agreement for the rental of premises at 2103 Stockton Boulevard and 2103 Stockton

22   Boulevard in Sacramento.  On February 10, 2016, the Office of Real Estate Services at UC Davis

23   received a letter from Defendant Robert McFarland of "CSG," advising that "California State

24   Grange" had changed its name, and that the Regents should make future rent checks for the 2103

25   Stockton Property and the 2101 Stockton Property payable to "CSG."  *Id*.  Defendant McFarland

26   attached a Fictitious Business Name Statement to that letter, indicating that "California State

27   

28

1    Grange" was doing business as "CSG."  Not suspecting that there was a conflict over use of the

2    names "CSG" and "California State Grange," the Regents tendered rent to "CSG."

3       (75) On May 4, 2016, Defendants filed an *ex parte* application with the California

4    Superior Court requesting an order allowing Defendant CSG to post a $750,000 undertaking

5    using funds from an account in the name of the California State Grange.  To support the

6    application, Defendants filed declarations by Defendant McFarland, and by representatives of the

7    Nevada Star Grange, the Orchard City Grange, the Redwood Valley Grange, and Rubidoux

8    Grange, purporting to pledge their interests in a California State Grange account.  These

9    declarations reveal that Defendants have been soliciting the California Granges to pledge their

10   interest in assets and accounts held in the name of the California State Grange, in violation of this

11   Court's order dated April 20, 2016, which prohibits Defendant CSG, "and its agents, affiliates,

12   and assigns, and any party acting in concert with them, from conducting any business activities

13   using the name 'Grange,'" including, but not limited to, . . . *using bank accounts or other financial*

14   *accounts under any name containing the word 'Grange*.'"  Case No. 2:14-cv-00676-WBS-AC

15   (Dkt. No. 138) at p. 37-38 (emphasis added).  On June 1, 2016, the state court agreed with

16   Plaintiffs and refused the order requested by Defendants, stating:

> Although in reply the Unchartered State Grange represents that it intends to change its
> corporate name and the name on its bank accounts to comply with the federal trademark
> injunction on its use of the name "Grange", this Court does not concur with its contention
> that changing the ownership of the Morgan Stanley accounts from the name of the
> [Chartered] California State Grange to the California State Guild ("CSG") is permissible
> under either this Court's Judgment and Preliminary Injunction [or the bylaws or Charter]
> or the Permanent Injunction issued by the federal district court.

21      (76) On May 9, 2016, the El Dorado County Sheriff's Department was called to the

22   scene of a disturbance at the premises of the Marshall Grange, the charter of which has been

23   revoked by Plaintiff the California State Grange for failure to pay dues and other violations of

24   Grange law.  The call was answered by Deputy Sheriff Garrett Gennai.  On information and

25   belief, Officer Gennai will testify that Defendant McFarland expressly represented himself as the

26   "President of the California State Grange."

27

28

1       (77)   The conduct of Defendants described above continues at this time unabated, with

2   new examples occurring almost every day, causing confusion, mistake and deception among the

3   California Granges and the public.

4       (78)   The irreparable harm facing the National Grange and the California State Grange

5   is evidenced in a document entitled "Stop the Harrassment [sic], Free Our Halls," posted by

6   Defendants on May 18, 2016, at www.ipetitions.com, soliciting the California Granges to sign the

7   following petition containing false statements and accusations based on Defendants' claim to

8   represent the California Granges and refusal to acknowledge that "Komski's organization,"

9   contrary to their fallacious lexicon, *is* the *California State Grange*:

        I (we) represent an established sovereign, California nonprofit mutual benefit corporation. I (we), as part of the estimated 75% of all California Guild (CSG) organizations and chapters, *established in 1873* and incorporated on October 7th, 1946, want to register this complaint against the tactics being used against us in an effort to *force us into joining the Grange of the State of California of the Order of Patrons of Husbandry organization, established in 2014 and administered by Ed Komski.*

        *We* have been under economic, real estate and personal threat and siege by Mr. Komski due to numerous pending lawsuits with the National Grange that are currently in Court. *We* have an active appeal with a stay in place against further action. *We* are committed to honoring the law of this land and wish to be left alone while the appeal works its way through the system.

        However, in *violation of court orders* to Mr. Komski restricting further action against me(we) and the CSG, we are under the constant barrage of threats by Mr. Komski of hostile takeover and losing our halls if we do not accede to his demands, despite pending court actions appealing these unjust and unwarranted lawsuits. This must stop and we ask the Court to consider our voices in this matter.

        We wish to express our dismay and frustration regarding the following tactics Mr. Komski has deployed including, but not limited to, the following:

        1.    Communicating personal and economic threats that unless we pay our *membership dues to Mr. Komski* and sign *his charter* by an ever-changing deadline, we will lose our own charters (which he has no legal right to, nor do we wish to *join his organization*), turn our halls over to him, which we legally own, as evidenced by valid titles and deeds of ownership and long term community presence. Examples:  *It would be a shame if something happened to your family.*

        2.    Sending surrogate agents to fairs with the intent to inhibit participation and *embarrass the children of our local CSG chapters*, participating under the Fairs' "independent" youth program category.  They have been required to remove their uniform vests while in the midst of showing their animals and have been arbitrarily imposed upon to do additional community service when other forms of community service was rejected;

3.      Sending unsolicited emails with threats against _our_ community halls to our members, even after they have unsubscribed and submitted formal complaints with the FTC and FCC that are pending;

4.      Continuing to harass members over the phone, after they have directly advised Mr. Komski and his surrogates to not contact them again, and their requests are ignored;

5.      Sending surrogate agents into our monthly business meetings to conduct corporate espionage with the intent to obtain confidential information that is shared with Mr. Komski;

6.      Trespassing, without identifying themselves, onto our Hall properties during private rental events to take photos of the real properties and assets;

7.      Advising members to ignore federal and state laws protecting our real estate titles, non-profit status, bank accounts, post office boxes, articles of incorporation, and stating, "Corporate law is bunk.";

8.      Using surrogate agents on local Hall Boards with the intent to change and illegally nullify legal voting outcomes, to replace with appointed, unelected officers of Mr. Komski's choice;

9.      Changing our corporations' Statements of Information filed with the Secretary of State, thus falsifying documents, without any authorization to do so;

10.      Sending surrogate agents to local post offices who attempt, and in some cases have succeeded, to convince the local Postmaster or postal staff to rekey the boxes in an effort to obtain U.S. mail.

11.      Threatening CSG rental tenants to pay rent to him or be evicted, effectively freezing these rental monies from use for our normal business operations;

12.      Contacting State offices at the Capital by phone and in person to discredit and directly interfere in CSG legislative initiatives.

It is with all due respect that we ask for your help in stopping any and all of the deliberate and blatant actions taken by Mr. Komski and his surrogate agents that are intended to apply pressure and force the consent of our membership that includes elderly, infirmed, children and parents to join his organization.

We ask that action be taken to prevent, by order of protection and a cease and desist action, Mr. Komski and his surrogate agents from continuing their assault on our membership and community halls until the Court determines the dispute between CSG (our parent organization), the National Grange and Grange of the State of California of the Order of Patrons of Husbandry is settled.  [Emphasis added.]

(79)    In Paragraph 2 of the document quoted above, Defendants are referring to an

incident in March 2016 in which Ed Komski, President of the chartered California State Grange,

was accused by the Defendants of interfering with the rights of children to show animals at a

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

county fair.  The exhibition was presented as a Grange exhibit by a former Grange that had

disaffiliated from the California State Grange and joined Defendant CSG.  As a member of the

fair commission, Mr. Komski took the justified position that the exhibit was acceptable as long as

it was not identified as a "Grange" exhibit.  On this purported ground Defendants advertised that

he was "harming the children."

(80)     On May 20, 2016, Defendants issued a communication to the California Granges

entitled "Defending Your Ground," stating:

> Brothers and Sisters of the CSG –
>
> The recent escalation of threats, abuse and hostile acts by Mr. Komski can no longer be tolerated.
>
> Claiming authority over us, last week Mr. Komski declared he had "revoked" the charters of four of _our_ _local_ _chapters_.  Threatening, he now directs them to turn over their property and assets to him.  [Emphasis added.]

By "our local chapters," Defendants are referring to the Nevada Star Grange, the Orchard City

Grange, the Redwood Valley Grange, and Rubidoux Grange, whose charters were revoked for

failure to pay their Grange dues and their unauthorized attempt to pledge their interest in assets

and accounts held in the name of the California State Grange.

(81)     Defendants' May 20 press release continues:

> In February, [Komski] carried out the hostile takeover of the Marshall Grange, replacing duly elected officers with his surrogates, locking-out the members from their own hall, commandeering the mail, and attempting to raid the bank accounts.
>
> With no reconciliation in sight, we are left with only two choices: Surrender, or Move On.
>
> We choose to Move On.
>
> This bulletin is directed to _those_ _members_ who choose to Move On together, protecting our sovereignty, property and rights. [Emphasis added.]

By "those members," above, Defendants are referring to the California Granges.

(82)    Defendants' May 20 press release concludes:

On your behalf, the CSG met yesterday with reputable attorneys that are ready, willing and able to defend community chapters against all threats and intimidation, beginning with the four chapters "revoked" last week by Mr. Komski.

Without representation, you are sitting ducks.

The idea is simple.  There is strength in numbers.  There is economy in sharing resources.  Likely, you have insurance that provides some protection against lawsuits.  But not all costs are covered.

For this purpose, we have started a Legal Defense Fund for Community Chapters to retain attorneys to represent local chapters, exclusively.

Join the cause and contribute.  Our goal is to raise $50,000.  That's an average of $1,000 per 50 local chapters.  Some can afford to contribute more.  Others, less.  We are all in this together.

(83)    As illustrated above, Plaintiffs are suffering a calamitous loss of goodwill as a result of Defendants' willful and deliberate misrepresentations that they are successors to the California State Grange and owners of its history and goodwill.  Every day that passes without intervention by the Court emboldens Defendants to engage in more ambitious misrepresentations, resulting in similar accusations and communications reflecting massive confusion, mistake and deception.  Instead of carrying out its mission, the California State Grange finds itself branded as "Komski's organization" and embroiled in daily attempts to correct such misrepresentations, all based on Defendants' claim to represent the California Granges by reason of their purported succession to the history and good will of the California State Grange.

## COUNT I
## False Designation of Origin

(84)    Plaintiffs incorporate by reference all of the preceding allegations.

(85)    The milestones claimed by Defendants belong to the history and tradition of the California State Grange, not Defendants.

(86)    By reason of this Court's award of summary judgment to the National Grange on its trademark infringement claim in *National Grange I,* Defendants' claim of succession to the

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

1   entire history and goodwill of the California State Grange, including all of its accomplishments

2   and milestones since 1873, is based on a falsehood.

3       (87)   Defendants' claim to ownership of the history and goodwill of the California State

4   Grange is false as a matter of law, because that history and goodwill cannot be lawfully separated

5   from the trademark with which it is associated.  The name "California State Grange" is a symbol

6   of goodwill and has no independent significance apart from the goodwill that it symbolizes.  As

7   owner of the name "California State Grange," the goodwill claimed by Defendants belongs

8   exclusively to Plaintiffs.

9       (88)   Defendants' claim to ownership of the history and goodwill of the California State

10   Grange is statutorily prohibited by Section 5 of the Lanham Act, which provides:

11         Where a registered mark or a mark sought to be registered is or may be used legitimately
      by related companies, such use shall inure to the benefit of the registrant or applicant for

12         registration[.]

13   15 U.S.C. § 1055.

14       (89)   Because all use of the name "Grange" by the California State Grange going back

15   to 1873 was by and through its relationship to the National Grange, such use inured exclusively to

16   the benefit of the National Grange as a "related" entity pursuant to Section 5 of the Lanham Act,

17   15 U.S.C. § 1055.

18       (90)   WHEREFORE, Defendants are engaged in false designation of origin within the

19   meaning of Lanham Act Section 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A), causing irreparable

20   injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

21
                                          **COUNT II**
22                                     **Federal False Advertising**

23       (91)   Plaintiffs incorporate by reference all of the preceding allegations.

24       (92)   Defendants, in their commercial advertising and promotion, are falsely advertising:

25         (a)   that Defendant McFarland is the leader of the California Granges;

26         (b)   that Defendant CSG owns the history and goodwill of the California State
            Grange;

27

28

(c)     that CSG is the legal and equitable successor to the California State Grange for all material purposes;

(d)     that Defendants are engaged in litigation against Plaintiffs to protect the rights of the California Granges;

(e)     that Plaintiffs are seeking to expropriate property from members of the California State Grange;

(f)     that members of the California State Grange must "disaffiliate" with Defendant CSG in order to "join" the California State Grange; and

(g)     that the president of the California State Grange is lying to the public by claiming to represent the California Granges.

(93)    Defendants are intimidating the California Granges with false threats of harm, imprisonment, and other false consequences if they "disaffiliate" from Defendants' organization and "affiliate" with the California State Grange of which they are already members.

(94)    Defendants' misrepresentations about the parties' identities and the origin of their commercial activities and services goes to the character, nature and value of those services, in violation of Lanham Act Section 43(a)(1)(B), which provides a cause of action against any person who, "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).

(95)    WHEREFORE, Defendants are engaged in false advertising within the meaning of Lanham Act Section 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B), causing irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

**COUNT III**
**California False Advertising**

(96)    Plaintiffs incorporate by reference all of the preceding allegations.

(97)    The Court has pendent and supplemental jurisdiction over this State claim.

(98)    Defendants, by their acts aforesaid, are violating Section 17500 of the California Business & Professions Code, which provides that "[i]t is unlawful for any ... corporation ... to make or disseminate or cause to be made or disseminated before the public in this state, ... in any

newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading ...."  Cal. Bus. & Prof.Code § 17500.

(99)   WHEREFORE, Defendants are engaged in false advertising under California law, causing irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

**COUNT IV**
**Trade Libel**

(100)   Plaintiffs incorporate by reference all of the preceding allegations.

(101)   The Court has pendent and supplemental jurisdiction over this State claim.

(102)   Defendants have publicly accused Plaintiffs of lying about the origin and source of goodwill associated with the California State Grange and the relationship between the parties.

(103)   On information and belief, Defendants have authorized, directed, endorsed or approved the lies and false statements recounted above.

(104)   Defendants are intentionally disparaging the quality of services offered by the California State Grange, causing pecuniary damage to the California State Grange and the National Grange, including, but not limited to, lost membership dues.

(105)   WHEREFORE, Defendants are engaged in trade libel under California law, causing irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

**COUNT V**
**Intentional Interference With Contractual Relations**

(106)   Plaintiffs incorporate by reference all of the preceding allegations.

(107)   The Court has pendent and supplemental jurisdiction over this State claim.

(108)   Plaintiff the National Grange is party to a contract with each state and local Grange chapter.  The contract inheres in the Charter issued by the National Grange to the state or local Grange, without which the chapter cannot function as a Grange.  The Charter appears in the form of a certificate, executed by the Master and Secretary of the National Grange.

(109)   The Charter of each Grange is received and recorded by the chartered state Grange, in this case, the California State Grange.  To be chartered as a local Grange, the By-Laws of the local Grange must conform with the requirements prescribed by the National Grange.  The template for these By-Laws is provided to the local Grange by the National Grange and reads, in relevant part:

> The qualifications for members; procedure for attaining membership; membership dues; and the right to vote are provided for in the By-Laws of the State Grange.  All candidates for membership and elected officers shall be required to agree at the time of election to membership or installation in office that at all times they will ***faithfully comply with the Constitution, By-Laws and Codes of the Grange at all levels***, as from time to time adopted.
>
> \*                                    \*                                    \*
>
> All persons, upon being admitted to regular or affiliate membership, shall sign the Roll Book, thereby ***pledging themselves to faithfully comply with the Laws of the Order at all levels***, as from time to time amended.
>
> \*                                    \*                                    \*
>
> The Officers of this Grange shall be elected and installed as prescribed in the Article entitled "Officers," subsection entitled "When Elected," of the California State Grange By-Laws.
>
> \*                                    \*                                    \*
>
> The duties of the officers of this Grange shall be such as prescribed in article entitled, "Officers" of the California State Grange By-Laws."
>
> \*                                    \*                                    \*
>
> The fees and dues of this Grange shall conform to those prescribed in the article regarding, "Funds" of the California State Grange By-Laws.  [Emphasis added.]

(110)   Similarly, Plaintiff the California State Grange has a contract with each local Grange member in the state.  The California State Grange By-Laws explain, in relevant part:

> All candidates for membership and elected officers shall be ***required to agree*** at the time of election to membership, or installation in office, that at all times they will ***faithfully comply the Constitution, By-Laws, and Codes of the Grange at all levels***, as from time to time adopted.

(111)   Defendants are aware of the contractual relations between Plaintiffs and the local Granges by reason of the responsibility that they exercised historically pursuant to the Constitution and By-Laws of the National Grange and the California State Grange, which included the recordation of and responsibility for Charters issued by Plaintiff the National Grange to California Granges and ensuring compliance with the Grange Constitution, By-Laws and Codes.

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

(112)   Knowing of the contractual relationship between Plaintiffs and the local Granges, Defendants have intentionally and willfully interfered with such relations by:

(a)   falsely designating themselves as the authorized representatives of the California Granges;

(b)   falsely representing to California Granges that Defendants are successors to the history and goodwill of the California State Grange;

(c)   falsely advertising to California Granges that California Granges must disaffiliate from Defendants' organization in order to join the chartered California State Grange; and that Defendants have powers, rights and privileges pursuant to the Constitution and By-Laws of the California State Grange;

(d)   exercising functions within the exclusive authority of the California State Grange, including but not necessarily limited to the collection of Grange dues; disposition of assets owned by the California State Grange, writing and cashing checks on the account of the California State Grange; reorganization of local California Granges; induction of new Grange members and installation of Grange officers; performance of Grange rituals; use of proprietary Grange regalia and paraphernalia for Grange rituals; functioning and holding themselves out to the public as a Grange; and

(e)   intimidating members of the California State Grange with false threats of harm, imprisonment, and other nonexistent consequences if such members "disaffiliate" from Defendants' organization and "affiliate" with the chartered California State Grange.

(113)   Defendants have interfered in the contractual relations between Plaintiffs and the local California Granges by means of correspondence from Defendant McFarland to the California Granges seeking to remain with the California State Grange, copied to the membership of the California State Grange, which includes false and deceptive statements such as the following:

(a)   "The most important decision any local 'Grange' can make is whether to be a Grange(r) or not.  Let us each ask – _Why_ _did_ _you_ join _the Grange,_ _and why_ _do_ _you_ _now_ _want_ _to_ _leave?_"  (Emphasis in original.)

(b)   "The Grange of California Order of Patrons of Husbandry, Chartered _IS NOT_ the original California State Grange (now called the CSG).  (Emphasis in original.)

(c)   There is NO ruling from the Court that morphed the CSG into Komski's organization.  In fact, just the opposite is true.  _The CSG is_ _the_ _original organization, maintaining_ _our_ _identity,_ _history,_ _corporation,_ _tax status,_ _structure_ _and_ _the_ _majority_ _of_ _our_ _chapters_ _and_ _members_.  The trademark ruling did not take any of that away." (Emphasis added.)

(d) "I thought you . . . voted to join the Komski organization?  If I am mistaken, please correct me.  Otherwise, why would you have any need to know what our reconciliation efforts are on behalf of *our members*?  The plain truth is, *your dues are going towards funding Mr. Komski's attack on the rest of us*."  (Emphasis added.)

(e) "Just so you know, I will not respond to your absurd accusations. It's my understanding that you are *no longer a member of our organization*."  (Emphasis added.)

(f) "*I work for the members of the CSG*.  Any member of the CSG has the right to criticize my integrity and performance.  However, *if you are no longer a member*, you do not have the same rights or protections to make false statements."  (Emphasis added.)

(g) "*Disaffiliation from the CSG and attempted alliance with Mr. Komski's organization affects your corporate and nonprofit status*.  Several CSG chapters have chosen to ignore these cautions, cross their fingers and plunder ahead without answers.  *The consequences could be significant*, such as losing you nonprofit status or standing as a California corporation, taxes, penalties, loss of property and assets."  (Emphasis added.)

(h) "I am not a tax or corporate professional, but many good people are doing deep research and what I have seen is sobering.  These *potential consequences may take many months or years to materialize*.  The wheels of state and federal government, and regulatory agencies move slowly.  But when they do appear - they will be retroactive.  Anyone who has ever received an *unexpected letter from the IRS adjusting taxes from three years earlier* knows how this works.  It is more common than you may think.  Add to that scrutiny from the FTB [sic] and BOE and county, it is quite a tangle."  (Emphasis added.)

(i) "The determination from one agency is passed on to all the others.  These agencies have become quite sophisticated.  They are all interconnected.  For those of you think this is me threatening, it is not.  *I have nothing to gain by seeing harm come to any of you*.  The opposite, when any of us is harmed, we all suffer."  (Emphasis added.)

(j) "Mr. Komski's dues amnesty program is bogus.  . . . *You begin paying dues to Mr. Komski if and when you join his organization*. You will be credited for dues you have paid to the CSG.  *Failure of a [G]range to pay dues to Mr. Komski is not cause enough for him to suspend or revoke your charter, if you assume he has the authority to do so*."  (Emphasis added.)

(k) "I have received your notice dated January 22 that the Windsor Grange inten[ds] to *disaffiliate from the CSG*.  I'm deeply disappointed.  The CSG has made every effort to make you aware of the *consequences of disaffiliation*.  If you do not agree, please notify me immediately."  (Emphasis added.)

(l) "This email does not in any way represent the *CSG's consent or agreement with your voluntary disaffiliation from the CSG*.  This email is notice that

1    *your action represents a violation of your bylaws and Articles of
     Incorporation.*"  (Emphasis added.)

2

3    (m)    "To fulfill your legal and fiduciary requirements, please make the
            necessary legal and business notifications and reporting required by the
            various business and regulatory agencies.  *We will follow up with these*

4           *business and regulatory agencies to make sure you have complied.*  We
            must do so, to avoid any fees or penalties being assessed against the CSG

5           should you fail to comply."  (Emphasis added.)

6    (n)    "*First requirement, please consider this email a formal request by the CSG*

7           *for a copy of the Windsor Grange, Incorporated IRS non profit tax*
            *determination letter.*  Please send the copy to CSG, 3830 U Street,
            Sacramento, CA 95817.  Per IRS regulation, you have 30 days from the

8           date of this email (January 26, 2016) to comply with our request."
            (Emphasis added.)

9

10   (o)    "Regarding your request for the third quarter dues paid to the CSG to be
            refunded to the Windsor Grange, we will not be refunding those dues.  *Per*
            *your bylaws and Articles of Incorporation, you are required to pay dues to*

11          *the CSG (formerly called the California State Grange).*  Your notice of
            intent to disaffiliate from the CSG is dated January 22, 2016.  However,

12          you have not completed that process."  (Emphasis in original.)

13       (114)   Defendants' threats to Plaintiffs' members described above have no basis in fact or

14   law, and are willfully directed at disrupting and damaging the contractual relations known by

15   Defendants to exist between Plaintiffs and their members, causing irreparable injury to Plaintiffs.

16   By these acts, Defendants are engaged in intentional interference in contractual relations in

17   violation of the common law of the State of California.

18       (115)   WHEREFORE, Plaintiffs demand judgment against Defendants as set forth in the

19   Prayer for Relief.

20                                   **COUNT VI**
                                **Copyright Infringement**

21

22       (116)   Plaintiffs incorporate by reference all of the preceding allegations.

23       (117)   Following the September 30 Injunction, Defendants, without the authorization,

24   consent or approval of Plaintiffs, copied the content of the website at www.californiagrange.com

25   onto Defendants' new website at www.csgunited.org.  Such content contained original works of

26   authorship belonging to the California State Grange, including, but not necessarily limited to, the

27   selection, coordination and arrangement of text, images, colors, and overall appearance.

28

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

(118)   Article XVIII of the By-Laws of the National Grange, Paragraph 4.18.1(A), addresses the ownership of intellectual property as between the National Grange and its affiliated state chapters, including the California State Grange.  Article XVIII provides:

> All registered and non-registered trademarks, logos, ***copyrights*** and other intellectual property related to, used by and associated with, the Order are the ***legal property*** *of the* ***National*** *Grange.*  [Emphasis added]

(119)   By reasons of its By-Laws, to which Defendants were bound at all times relevant to this Complaint, Plaintiff the National Grange owns all right, title and interest to the copyright in original works of authorship created by the California State Grange that were "used by and associated with" the Grange.  Plaintiff the National Grange therefore owned the copyright to all original authorship in the content at www.californiagrange.org.  The National Grange's claim to ownership of such copyright is attested in the five registrations issued by the United States Copyright Office, copies of which are attached to this Complaint as Exhibit 2.

(120)   By copying the original authorship of the California State Grange at www.californiagrange.org onto their new website at www.csgunited.org, Defendants infringed Plaintiff the National Grange's exclusive rights under Section 106 of the United States Copyright Law, 17 U.S.C. § 106.

(121)   Defendants' copyright infringement harms Plaintiff the National Grange as the copyright owner, as well as Defendant the California State Grange, because Defendants' use of copyright materials that were previously used by the chartered California State Grange causes confusion, mistake and deception among consumers as to the ownership of the history and goodwill of the California State Grange.

(122)   WHEREFORE, Plaintiffs demand judgment against Defendants as set forth in the Prayer for Relief.

**COUNT VI**
**Federal Trademark Infringement**

(123)   Plaintiffs incorporate by reference all of the preceding allegations.

- 46 -

1      (124)   Plaintiff the National Grange owns all right, title and interest to multiple trademark

2 and service mark registrations covering the name "Grange," including but not limited to the

3 following:

| Mark | Goods / Services |
| --- | --- |
| **THE GRANGE FOUNDATION,** U.S. Reg. 1782923, registered 7/20/1993 | Philanthropic services; namely, endowing scholarships and funding scientific, educational and charitable activities, in Class 36 (first use 1960) |
| **NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY,** U.S. Reg. 1816827, registered 1/18/1994 | Posters, and publications; namely, newsletters, brochures, and pamphlets about family life in farm, rural and suburban communities, national legislative affairs, and education, medical treatment and recreational opportunities for deaf individuals, in Class 16 (first use 1987) |
| | Providing educational assistance and recreational opportunities to deaf individuals, in Class 41 (first use 1987) |
| | Association and charitable services; namely, advancing the quality of family life in farm, rural and suburban communities, and providing medical assistance to deaf individuals, in Class 42 (first use 1987) |
| **NATIONAL GRANGE,** U.S. Reg. 1817894, registered 1/25/1994 | Credit cards, posters, and publications; namely, newsletters, brochures, and pamphlets about family life in farm, rural and suburban communities, national legislative affairs, and education, medical treatment and recreational opportunities for deaf individuals, in Class 16  (first use 1876) |
| | Providing educational assistance and recreational opportunities to deaf individuals, in Class 41 (first use 1876) |
| | Association and charitable services; namely, advancing the quality of family life in farm, rural and suburban communities, and providing medical assistance to deaf individuals, in Class 42 (first use 1876) |
| **GRANGE,** U.S. Reg. 1872429, registered 1/10/1995 | Credit cards, posters, and publications; namely, newsletters, brochures, and pamphlets about family life in farm, rural and suburban communities, national legislative affairs, in Class 16 (first use 1876) |
| | Association and charitable services; namely, advancing the quality of family life in farm, rural and suburban communities, in Class 42 (first use 1876) |
| **NATIONAL GRANGE,** U.S. Reg. 1817894, registered 1/25/1994 | Credit cards, posters, and publications; namely, newsletters, brochures, and pamphlets about family life in farm, rural and suburban communities, national legislative affairs, and education, medical treatment and recreational opportunities for deaf individuals (first use 1876) |
| | Providing educational assistance and recreational opportunities for deaf individuals, in Class 41(first use 1876) |
| | Association and charitable services; namely, advancing the quality of family life in farm, rural and suburban communities, in Class 42 (first use 1876) |

| Mark | Goods / Services |
|------|------------------|
| **GRANGE,** U.S. Reg. 3792978, registered 5/25/2010 | Restaurant services, in Class 43 (first use 2008) |
| **GRANGE,** U.S. Reg. 3974240, registered 6/7/2011 | Cookbooks, in Class 16 (first use 1888, first use in commerce 1921) |
| | Farmers' markets, in Class 35 (first use 1880) |
| | Catering services; providing community centers for social gatherings and meetings, at which meals are served; providing social meeting, banquet and social function facilities; provision of fair and exhibition facilities, in Class 43 (first use 1885) |
| **GRANGE,** U.S. Reg. 4135668, registered 2/14/2012 | Jewelry, in Class 14 (first use 1898) |
| **GRANGE,** U.S. Reg. 4266408, registered 1/1/2013 | Dress shirts, hats, jackets, short-sleeved or long-sleeved t-shirts, sweat shirts and ties, all sold or distributed in connection with a national fraternal organization, and specifically excluding footwear, in Class 25 (first use 1874) |
| **HEADLEY GRANGE,** U.S. Reg. 4495306, registered 3/11/2014 | Cigars, in Class 34 (first use 2012) |

(125)   Despite this Court's permanent injunction in *National Grange I* barring Defendants from using "Grange," Defendants continued to use the name "Grange" in public filings and registrations with the California Secretary of State and the County of Sacramento.

(126)   Defendants' use of the name "Grange" following the permanent injunction in *National Grange I* was visible to the public on the California Secretary of State and Sacramento County websites.

(127)   After the permanent injunction in *National Grange I,* Defendants continued to represent their email addresses as "president@californiagrange.org" on lobbying licenses with the Secretary of State that were visible to the public.

(128)   Until at least February 4, 2016, Defendants issued billing statements titled "Grange Dues" and endorsed and deposited checks addressed to "California State Grange."

(129)   Defendants' public business profiles on Google.com and ZoomInfo, after the permanent injunction, listed CSG as California State Grange and its website as www.californiagrange .org, even though Defendants were free to correct or remove that

1    information any time they wished.  Defendants' agents have continued to represent that

2    Defendant CSG is the "California State Grange."  In December 2015,  one of Plaintiffs'

3    representatives called Defendants' business number and asked if he had reached the "California

4    State Grange"; the receptionist answered, "Yes."

5        (130)   Defendants' conduct has caused actual confusion among at least fifty of Plaintiffs'

6    members regarding Defendants' affiliation with Plaintiff the California State Grange and the

7    origin of its services.

8        (131)   In addition to using name "California State Grange" after the permanent injunction

9    in *National Grange I*, use of the name "CSG" by Defendants is a direct infringement of the

10   "Grange" trademark because it is confusingly similar to that mark.

11       (132)   WHEREFORE, Plaintiffs demand judgment against Defendants as set forth in the

12   Prayer for Relief.

## COUNT VII
## Infringement of Unregistered Logo and Trade Dress

14       (133)   Plaintiffs incorporate by reference all of the preceding allegations.

15       (134)   The California State Grange logo illustrated in Paragraph 18 above, in addition to

16   the look and appearance of the former California State Grange website at

17   www.californiagrange.org, during all periods of time relevant to this Complaint, had acquired

18   distinctiveness as a designation of origin that identified Plaintiffs as the origin of goods and

19   services advertised and sold at that website, and belonged to Plaintiff the National Grange.

20       (135)   Defendants, by their willful and deliberate copying of the California State Grange

21   logo and the content and appearance of the California State Grange website at

22   www.californiagrange.org, infringed Plaintiffs' unregistered logo and trade dress in violation of

23   Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

24       (136)   WHEREFORE, Plaintiffs demand judgment against Defendants as set forth in the

25   Prayer for Relief.

26

27

28

1

2

**COUNT VIII**
**Trespass**

3    (137)   Plaintiffs incorporate by reference all of the preceding allegations.

4    (138)   The Court has pendent and supplemental jurisdiction over this State claim.

5    (139)   Plaintiff the California State Grange is the legal owner of all real property in the

6   possession of Defendant CSG, currently named the "California Guild," California Secretary of

7   State Entity No. C0210454 and the 1992 corporation previously named the "California Grange

8   Foundation" and currently named the "Heartland Foundation," California Secretary of State

9   Entity No. C1821838, including the building in which Defendants are conducting their operations

10   located at 3830 U St., Sacramento, CA 95817.

11    (140)   Ownership of the property in question by Plaintiff the California State Grange was

12   affirmed by the California Superior Court in an action filed by Plaintiffs against Defendants and

13   others seeking a declaration of the parties' property rights in *National Grange of the Order of*

14   *Patrons of Husbandry et al. v. The California State Grange et al.,* Sacramento County Superior

15   Court Case No. 34-2012-00130439-CU-MC-GDS (filed Oct. 1, 2012).  On November 16, 2015,

16   the Superior Court entered judgment for the National Grange holding that CSG is obligated to

17   return all Grange property in its possession as of April 5, 2013, to the re-chartered California

18   State Grange.  The judgment was subsequently appealed.

19    (141)   Defendants have intentionally entered Plaintiff the California State Grange's

20   property, without the permission, authorization, consent or approval of the Plaintiffs, for the

21   purpose of causing confusion, mistake and deception.

22    (142)   Defendants, by their acts aforesaid, have harmed Plaintiffs by causing confusion

23   among the California Granges, and are violating the Court's April 20, 2016 Order in *National*

24   *Grange I.*

25    (143)   WHEREFORE, Plaintiffs demand judgment against Defendants as set forth in the

26   Prayer for Relief.

27

28

## COUNT IX
### Conversion

(144)   Plaintiffs incorporate by reference all of the preceding allegations.

(145)   The Court has pendent and supplemental jurisdiction over this State claim.

(146)   Plaintiff the California State Grange is the legal owner of all personal property in the possession of Defendant CSG, including, but not limited to, the 1946 corporation currently named the "California Guild," California Secretary of State Entity No. C0210454; the 1992 corporation previously named the "California Grange Foundation" and currently named the "Heartland Foundation," California Secretary of State Entity No. C1821838 ; the business records, mailing lists, and proprietary data now or previously held by those entities; and all Grange regalia, documents and tangible things in Defendants' possession bearing the name "Grange."

(147)   Defendants, by their acts aforesaid, have intentionally and substantially interfered with Plaintiffs' property by taking possession of the property and preventing Plaintiffs' access to said property, thereby converting such property to their own ownership and use in violation of the common law of the State of California, all based on Defendants' false representations that they are the authorized representatives of Plaintiff the California State Grange and authorized representatives of the 1946 and 1992 corporations incorporated by the California State Grange.

(148)   Defendants, by their acts aforesaid, have harmed Plaintiffs by causing confusion among the California Granges, and are violating the Court's April 20, 2016 Order in *National Grange I.*

(149)   WHEREFORE, Plaintiffs demand judgment against Defendants as set forth in the Prayer for Relief.

### PRAYER FOR RELIEF

Plaintiffs request:

(1)     A declaration that the National Grange of the Order of Patrons of Husbandry (the "National Grange"), and its chartered California chapter, the California State Grange, are -

(a)     the exclusive authorized representatives of the California State Grange;

1        (b)     the exclusive authorized representatives of the 1946 corporation formerly

2   named the California State Grange now named the California Guild, California Secretary

3   of State Entity No. C0210454;

4        (c)     the exclusive authorized representatives of the 1992 California corporation

5   formerly named the California Grange Foundation, now named the Heartland Foundation,

6   California Secretary of State Entity No. C1821838; and

7        (d)     the exclusive owner of all assets and accounts held, registered or recorded

8   in the name of the California State Grange and/or California Guild, and the California

9   Grange Foundation and/or Heartland Foundation.

10     (2)     A preliminary and permanent injunction against Defendants, collectively and

11  individually, and their officers, shareholders, partners, principals, agents, assignees, beneficiaries,

12  successors, licensees, distributors, attorneys, proxies, alter egos, aliases, and all other persons

13  acting in concert with Defendants collectively or individually, from:

14        (a)     use of "CSG," "Granger," "California State Guild," "California Guild," and

15   other trademarks, service marks, trade names, acronyms, abbreviations, logos, trade dress,

16   Internet domain names, or advertising keywords, that are confusingly similar to Plaintiffs'

17   registered and unregistered trademarks and trade dress;

18        (b)     representing or asserting that they are affiliated or connected with, the

19   successors to, or the authorized representatives of, the California State Grange, the local

20   California Granges, the 1946 corporation formerly named the California State Grange,

21   now named the California Guild, California Secretary of State Entity No. C0210454, or

22   the 1992 corporation formerly named the California Grange Foundation, now named the

23   Heartland Foundation, California Secretary of State Entity No. C1821838, in any

24   advertising, promotion, and commercial or official communications, including but not

25   limited to communications with the California Secretary of State on behalf of those

26   entities;

27

28

1    (c)    referencing the history and goodwill of the California State Grange, their

2    past association with the California State Grange, or their present or past association with

3    the 1946 corporation formerly named the California State Grange, now named the

4    California Guild, California Secretary of State Entity No. C0210454, or the 1992

5    corporation formerly named the California Grange Foundation, now named the Heartland

6    Foundation, California Secretary of State Entity No. C1821838, in any advertising,

7    promotion and commercial or official communications;

8    (d)    appropriating, disposing or dissipating assets and accounts now or

9    previously held in the name of, or belonging to, the California State Grange, the local

10   California Granges, the 1946 corporation formerly named the "California State Grange,"

11   now named "California Guild," California Secretary of State Entity No. C0210454, or the

12   1992 corporation previously named the "California State Grange" and currently named the

13   "Heartland Foundation," California Secretary of State Entity No. C1821838;

14   (e)    engaging in false advertising including but not limited to false

15   representations to the California Granges -

16   (i)    that Defendant McFarland is the president or authorized

17   representative of the California Granges;

18   (ii)    that either or both Defendants are successors to the history and

19   goodwill of the California State Grange;

20   (iii)    that the California Granges must "disaffiliate" with either or both

21   Defendants in order to "join" the chartered California State Grange;

22   (iv)    that the California Granges will suffer adverse tax consequences or

23   other adverse legal consequences from remaining with the chartered California

24   State Grange;

25   (v)    that the president of Plaintiff the California State Grange is lying to

26   the public by claiming to represent the California State Grange; and

27

28

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

1          (vi)     that Defendants have powers, rights and privileges pursuant to the

2     Constitution and By-Laws of the California State Grange;

3          (f)      interfering in the contractual relations between the California Granges and

4     the California State Grange or the National Grange;

5          (g)      exercising functions within the exclusive authority of the California State

6     Grange including but not necessarily limited to the collection of Grange dues; disposition

7     of assets owned by the California State Grange, writing and cashing checks on the account

8     of the California State Grange; reorganization of local California Granges; induction of

9     new Grange members and installation of Grange officers; performance of Grange rituals;

10    and use of proprietary Grange regalia for Grange rituals;

11         (h)      intimidating the California Granges and their members with false threats of

12    harm, imprisonment, and other nonexistent consequences if such members "disaffiliate"

13    from Defendants' organization and "affiliate" with the chartered California State Grange;

14         (i)      distributing records, copies, recordings, histories or descriptions of past or

15    present events sponsored, authorized, endorsed or approved by Plaintiff or the California

16    State Grange in a manner that is likely to cause confusion, mistake or deception about the

17    sponsorship, authorization, endorsement or approval of such events, or to cause members

18    of the California State Grange to belief, mistakenly, that such events were authorized,

19    sponsored, endorsed or approved by the California State Grange;

20         (j)      intentionally disparaging the quality of services offered by the California

21    State Grange, disrupting and damaging the contractual relations between the California

22    State Grange and its members, and interfering with prospective economic advantage of

23    Plaintiffs; and

24         (k)      reproducing, distributing or preparing derivative works based on Plaintiffs'

25    copyrighted works, including but not limited to the former website of the California State

26    Grange.

27

28

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

(3)     A preliminary and final order requiring Defendants, collectively and individually, and their officers, shareholders, partners, principals, agents, assignees, beneficiaries, successors, licensees, distributors, attorneys, proxies, alter egos, aliases, and all other persons acting in concert with Defendants collectively or individually, to:

(a)     surrender and vacate the premises of the California State Grange at 3830 U St., Sacramento, CA 95817, and refrain from remaining on or re-entering the premises; and refrain from further use of that address on any business, commercial or official communications;

(b)     return to Plaintiffs all equipment, fixtures and other real and personal property of the California State Grange now or previously located at 3830 U St., Sacramento, CA 95817, or otherwise owned by the California State Grange, the local California Granges, the 1946 corporation currently named the "California Guild," California Secretary of State Entity No. C0210454, or the 1992 corporation previously named the "California Grange Foundation" and currently named the "Heartland Foundation," California Secretary of State Entity No. C1821838;

(c)     return to Plaintiffs any proprietary Grange regalia in their possession;

(d)     remove all of their personal property and equipment located at 3830 U St., Sacramento, CA 95817, without injury to the premises or any of Plaintiffs' property located thereon;

(e)     disconnect all telephone numbers used by Defendants that were ever registered to the California State Grange; and refrain from further use of such telephone numbers in any business, commercial or official communications;

(f)     deliver up all business records, mailing lists, and proprietary data now or previously owned by the California State Grange, the local California Granges, the 1946 corporation currently named the "California Guild," California Secretary of State Entity No. C0210454, or the 1992 corporation previously named the "California Grange Foundation" and currently named the "Heartland Foundation," California Secretary of

State Entity No. C1821838, in addition to all documents and tangible things bearing the name "Grange";

(g)      display in all business, commercial, official and public communications, for a period of time extending until two years following a final order in this case or other such time as may be judged appropriate by the Court, the following prominent disclaimer: NOT AFFILIATED WITH THE CALIFORNIA STATE GRANGE; and

(h)      in any keyword purchased or used by Defendants for Internet advertising, activate the terms "Grange," "Granger," "California Grange Foundation," "California Grange," "California State Grange," "CSG," "CG" and "CGFoundation" as "negative keywords" or "negative Adwords," so as to exclude the use of such terms to attract Internet traffic drawn by public familiarity with the registered or unregistered trademarks of Plaintiff and the California State Grange.

(4)      An order directing the California Secretary of State to recognize Plaintiffs as the exclusive representatives of the California State Grange and the 1946 corporation currently named the "California Guild," California Secretary of State Entity No. C0210454, as well as the 1992 corporation previously named the "California Grange Foundation" and currently named the "Heartland Foundation," California Secretary of State Entity No. C1821838, for all purposes relevant to the registration, ownership and responsibility of such corporate entities.

(5)      An order, pursuant to 17 U.S.C. § 503(a)(1)(A) and (B), impounding all copies and records of Plaintiff's copyrighted works, including but not limited to the former website of the California State Grange, and all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or records may be reproduced.

(6)      An order, pursuant to 17 U.S.C. § 503(a)(1)(C), impounding all records documenting the manufacture, sale and receipt of things involved in Defendant's infringement of Plaintiff's copyrighted works, including but not limited to the former website of the California State Grange, *provided that* any records seized under this order shall be taken into the custody of the Court.

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

1     (7)     An order, pursuant to 17 U.S.C. § 503(b), requiring the destruction or other

2     reasonable disposition of all copies or records found to have been made or used in violation of

3     Plaintiff's copyrights, including but not limited to Plaintiff's copyright in the website of the

4     California State Grange, and of all plates, molds, matrices, masters, tapes, film negatives, or other

5     articles by means of which such copies or records may be reproduced.

6     (8)     An order declaring that Defendants' acts constitute:

7          (a)     false designation of origin in violation of Section 43(a)(1)(A) of the

8     Federal Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. §

9     1125(a)(1)(A);

10          (b)     false advertising in violation of Lanham Act Section 43(a)(1)(B), 15 U.S.C.

11     § 1125(a)(1)(B);

12          (c)     false advertising in violation of Section 17500 of the California Business &

13     Professions Code;

14          (d)     trade libel in violation of California common law;

15          (e)     intentional interference with contractual relations under California common

16     law;

17          (f)     intentional interference with prospective economic advantage under

18     California common law;

19          (g)     federal copyright infringement;

20          (h)     federal trademark and service mark infringement;

21          (i)     infringement of Plaintiffs' unregistered logos and trade dress.

22          (j)     federal trademark and service mark infringement in violation of Section

23     32(1) of the Lanham Act, 15 U.S.C. § 1114(1);

24          (k)     infringement of Plaintiffs' unregistered trademarks, service marks, trade

25     names, logos, trade dress in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §

26     1125(a);

27          (l)     trespass under the common law of California; and

28

FIRST AMENDED COMPLAINT
CASE NO.: 2-16-CV-00201-WBS-AC

1          (m)      conversion under the common law of California.

2      (9)      An order directing Defendants to file with this Court and serve upon Plaintiffs

3  within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth

4  in detail the manner and form in which Defendants have complied with, and will continue to

5  comply with, the injunction and further orders of this Court.

6      (10)      An accounting of profits pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. §

7  1117(a).

8      (11)      An award of lost profits and damages in such amount as may appear appropriate

9  following a trial on the merits, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

10      (12)      An award of treble damages pursuant to Section 35(a) of the Lanham Act, 15

11  U.S.C. § 1117(a).

12      (13)      An award of costs and attorney fees pursuant to Section 35(a) of the Lanham Act,

13  15 U.S.C. § 1117(a).

14      (14)      Such further relief as the Court may find to be equitable, just and appropriate.

15

16  Dated:  August 17, 2016          **SMITH, GAMBRELL & RUSSELL LLP**

17                              By:          /s/ James L. Bikoff
                                         James L. Bikoff, *Pro Hac Vice*
18                                       Bruce A. McDonald, *Pro Hac Vice*
                                         Holly B. Lance, *Pro Hac Vice*
19                                       1055 Thomas Jefferson St. NW, Ste. 400
                                         Washington, DC 20009
20                                       Telephone: 202.263.4300
                                         Facsimile:  202.263.4329
21                                       Email:      jbikoff@sgrlaw.com
                                                     bmcdonald@sgrlaw.com
22                                                   hlance@sgrlaw.com
23

24

25                                       Martin N. Jensen (SBN 232231)
                                         Thomas L. Riordan (SBN 104827)
26                                       PORTER SCOTT
                                         350 University Ave., Suite 200
27                                       Sacramento, CA 95825
                                         Telephone: 916.929.1481
28

- 58 -

Facsimile:  916.927.3706
Email:      mjensen@porterscott.com
            triordan@porterscott.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 17th day of August 2016, I electronically filed the foregoing **FIRST AMENDED COMPLAINT FOR FALSE DESIGNATION OF ORIGIN, TRADE LIBEL, INTENTIONAL INTERFERENCE IN CONTRACTUAL RELATIONS, COPYRIGHT INFRINGEMENT, TRADEMARK AND TRADE DRESS INFRINGEMENT** with the Clerk of the Court, using the CM/ECF system, which will automatically send email notifications of such filing to all counsel who have entered an appearance in this action.

/s/ James L. Bikoff
James L. Bikoff

- 59 -