1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

                          ----oo0oo----

11

12   THE NATIONAL GRANGE OF THE        CIV. NO. 2:16-201 WBS DB
     ORDER OF PATRONS OF
13   HUSBANDRY, a District of          MEMORANDUM AND ORDER RE: MOTION
     Columbia nonprofit                FOR PRELIMINARY INJUNCTION
14   corporation, and THE
     CALIFORNIA STATE GRANGE, its
15   chartered California chapter,

16             Plaintiffs,

17        v.

18
     CALIFORNIA STATE GRANGE d/b/a
19   "California Guild," a
     California corporation, and
20   ROBERT McFARLAND, a
     California resident,
21
               Defendants.
22

23
                          ----oo0oo----
24

25        Plaintiffs the National Grange of the Order of Patrons

26   of Husbandry and the California State Grange (collectively

27   "plaintiffs") brought this action, the most recent in a series of

28

                                  1

1   actions, against defendants the California Guild[1] and Robert

2   McFarland (collectively "defendants") for, <u>inter alia</u>, false

3   advertisement and unfair competition under the Lanham Act, 15

4   U.S.C. § 1125(a).  Presently before the court is plaintiffs'

5   motion for preliminary injunction.  (Pls.' Mem. at 1-2 (Docket

6   No. 76-1).)

7   I.    <u>Factual and Procedural Background</u>

8         The National Grange is a nonprofit fraternal

9   organization founded in 1867 to promote the interests of rural

10  America and agriculture.  (First Am. Compl. ("FAC") ¶ 15 (Docket

11  No. 75).)  The organization provides goods and services to

12  agricultural communities and is involved in some 2,100 towns

13  across the country.  (<u>Id.</u>)

14        The National Grange created the California State Grange

15  as its California affiliate in 1873.  (<u>Id.</u> ¶ 16.)  As a chartered

16  affiliate, the California State Grange collected dues from local

17  granges across California and turned over a portion of those dues

18  to the National Grange.  (<u>Id.</u>)  On October 7, 1946, the

19  California State Grange registered as a corporation with the

20  California Secretary of State.  (Decl. of Betsy Huber Ex. 8,

21  California State Grange Corporate Registry (Docket No. 54-6).)

22  The California State Grange elected McFarland as its leader in

23  2009.  (FAC ¶ 17.)

24        In 2012, disputes arose between the National Grange and

25  _____

26        [1]   A central issue in this case is whether defendants may
    refer to themselves as the "California State Grange."  Consistent
27  with the court's rulings in previous orders, all references to
    the "California State Grange" in this Order refer to plaintiffs,
28  not defendants.

members of the California State Grange.  (Id.)  As a result, the National Grange revoked the California State Grange's membership and the two sides disaffiliated in 2013.  (Id.; Pls.' Mem. at 4.) Members of the disaffiliated chapter, led by McFarland, continued as a separate entity under the corporate charter filed in 1946. (Pls.' Mem. at 3-4.)  The National Grange chartered a new California State Grange in 2014.  (Id. at 7.)  What resulted after the split, then, were two California entities: a newly chartered California State Grange (i.e., along with the National Grange, plaintiffs to this action) and a disaffiliated entity led by McFarland (i.e., defendants).

After the split, defendants continued to use the registered corporate name "California State Grange" and represent themselves publically as the California State Grange.  (Id. at 3-4.)  In March 2014, the National Grange filed an action against the disaffiliated entity for federal trademark infringement, trademark dilution, trademark counterfeiting, and false advertisement and unfair competition under the Lanham Act ("Grange I").  (Id. at 4.)

On July 14, 2015, this court granted the National Grange summary judgment on its trademark infringement and false advertisement and unfair competition claims.  (Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange, 115 F. Supp. 3d 1171, 1183 (E.D. Cal. 2015).)[2]  The court permanently

---

[2]    The National Grange voluntarily dismissed its remaining Grange I claims with prejudice.  (Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange, Civ. No. 2:14-676 WBS AC, 2016 WL 1587193, at *3 n.2 (E.D. Cal. April. 20, 2016).)

1 | enjoined the disaffiliated entity from using the word "Grange,"
2 | but declined to extend that prohibition to include "Granger,"
3 | "CSG," and "CG" because the National Grange did not expressly
4 | seek such relief in its Grange I complaint.  (Nat'l Grange of the
5 | Order of Patrons of Husbandry v. Cal. State Grange, Civ. No.
6 | 2:14-676 WBS DAD, 2015 WL 5813681, at *2-3 (E.D. Cal. Sept. 30,
7 | 2015), modified, Civ. No. 2:14-676 WBS AC, 2016 WL 1587193 (E.D.
8 | Cal. Apr. 20, 2016).)  The parties have appealed those rulings to
9 | the Ninth Circuit, where they are currently pending.  (Nat'l
10 | Grange of the Order of Patrons of Husbandry v. Cal. State Grange,
11 | Civ. No. 2:14-676 WBS AC, 2016 WL 1587193 ("Apr. 20 Order"), at
12 | *4 (E.D. Cal. April. 20, 2016).)

13 |     On April 20, 2016, this court found the disaffiliated
14 | entity in "deliberate and willful" violation of its permanent
15 | injunction on usage of the term "Grange" and granted the National
16 | Grange's motion for post-judgment injunctive relief ("April 20
17 | Order").  (Id. at 2, 34.)  The court ordered that the
18 | disaffiliated entity and "its agents, affiliates, assigns, and
19 | any party acting in concert with [it] or its agents, affiliates,
20 | and assigns":

> [R]emove the word "Grange" from all corporate
> registrations and other documents filed with any federal,
> state, or local government, including, but not limited
> to, articles of incorporation and lobbying licenses on
> file with the California Secretary of State and all
> fictitious business name registrations with the County of
> Sacramento . . .

> [R]emove the word "Grange" from all public telephone and
> business directory listings, on the internet or
> otherwise, including, but not limited to, online business
> directory listings on www.Google.com and
> www.ZoomInfo.com, to the extent they can do so . . .

4

[Refrain] from: (a) conducting business using the name "Grange," including, but not limited to, soliciting dues using the name "Grange," collecting checks addressed to any entity whose name contains the word "Grange," endorsing checks using any name containing the word "Grange," using bank accounts or other financial accounts under any name containing the word "Grange," and endorsing, signing, or executing any document, lease, instruction, or financial instrument using any name containing the word "Grange"; (b) using "Grange" in any domain name or email address or otherwise representing their domain name or email address as containing the word "Grange"; and (c) referencing their past affiliation with plaintiff or any other entity whose name contains the word "Grange," including representing themselves to be the former California State Grange; successor to the California State Grange; or formerly known as, trading as, or doing business as the California State Grange . . . .

(Id. at 37-38.)  After the April 20 Order, the disaffiliated entity changed its corporate name to the "California Guild." (Pls.' Mem. at 6.)  Since that time, however, it has continued to publicly refer to itself as "CSG" and "[f]ormerly the California State Grange."  (Decl. of Ed Komski ("Komski Decl.") Ex. 2, CSG Website Screenshots (Docket No. 54-3).[3]

---

[3]     Defendants submitted an ex parte motion challenging the validity of representations made in an email attached to the Komski declaration.  (See Defs.' Ex Parte Appl. (Docket No. 87).) The email recounted a conversation that allegedly took place between the author of the email and a member of the California Guild.  (See Komski Decl. Ex. 6.)  Defendants allege that the conversation never took place and ask the court to strike the entire declaration based on that email.  (Defs.' Ex Parte Appl. at 5-6.)  The court did not rely on that email in deciding plaintiffs' preliminary injunction motion.  Moreover, plaintiffs have provided evidence that the author of the email was referencing a different person and defendants simply misread the email.  (See Pls.' Opp'n, Decl. of Yvette Adams (Docket No. 89-1).)  Accordingly, the court will not strike the Komski declaration on that basis.

1          Simultaneous to litigation in this court was litigation

2    in the California Superior Court over ownership of the California

3    State Grange's property.  (Pls.' Mem. at 6.)  On August 18, 2015,

4    the Superior Court entered judgment in favor of the National

5    Grange and ordered that the California Guild "transfer to the

6    Newly Chartered State Grange all Grange property in its

7    possession or control as of the date its Charter was revoked"

8    ("August 18 Order").  (FAC Ex. 1 at 33 ("Aug. 18 Order") (Docket

9    No. 75-1).)

10         On February 1, 2016, plaintiffs brought the present

11   action against defendants for, inter alia, false advertisement

12   under the Lanham Act.[4]  (FAC at 38-40.)  Plaintiffs allege that

13   since Grange I, defendants have continued to take credit for the

14   California State Grange's history and achievements, spread false

15   rumors about adverse tax consequences associated with Grange

16   membership, misappropriate Grange assets, and misrepresent

17   themselves as successors to the California State Grange.  (See

18   Pls.' Mem. at 2.)

19         Plaintiffs seek a long list of injunctive relief.  From

20   a broad level, that list includes: (1) prohibiting defendants

21   from "referencing the history and goodwill of the California

22

23   _____

24         [4]    Plaintiffs also seek damages for false advertising,
     trade libel, intentional interference with contractual relations,
25   trespass, and conversion under California law, and false
     designation of origin, trademark infringement, copyright
26   infringement, and unregistered logo and trade dress infringement
     under federal law.  (FAC at 40-51.)  Because plaintiffs
27   "respectfully defer[]" consideration of these claims, (Pls.' Mot.
     at 11), the court will not consider them for purposes of this
28   motion.

                                   6

1    State Grange"; (2) prohibiting defendants from telling local

2    granges that they must disaffiliate with the California Guild to

3    "join" the California State Grange and will suffer adverse tax

4    consequences for doing so; (3) prohibiting defendants from

5    performing public and private functions of the California State

6    Grange; (4) ordering that defendants "deliver up business

7    records, mailing lists, and proprietary data of the California

8    State Grange . . . as well as all documents . . . bearing the

9    name 'Grange'"; (5) ordering that defendants return all Grange

10   tangible property; (6) restraining defendants from

11   misappropriating California State Grange funds; (7) ordering

12   defendants to vacate Grange headquarters and properties and

13   disconnect all telephone numbers formerly registered to the

14   California State Grange; (8) prohibiting defendants from

15   representing themselves as successors to the California State

16   Grange; and (9) ordering that defendants use a disclaimer on all

17   public materials stating "NOT AFFILIATED WITH THE CALIFORNIA

18   STATE GRANGE."  (Id. at 3; Pls.' Proposed Order at 1-5 (Docket

19   No. 76-3).)

20   II.  Legal Standard

21        In order to obtain a preliminary injunction, the moving

22   party "must establish that he is likely to succeed on the merits,

23   that he is likely to suffer irreparable harm in the absence of

24   preliminary relief, that the balance of equities tips in his

25   favor, and that an injunction is in the public interest." Winter

26   v. Natural Res. Def. Council, Inc., 555 U.S. 7, 21 (2008); Humane

27   Soc. of the U.S. v. Gutierrez, 558 F.3d 896, 896 (9th Cir. 2009).

28   Injunctive relief is "an extraordinary and drastic remedy, one

                                    7

1   that should not be granted unless the movant, by a clear showing,

2   carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520

3   U.S. 968, 972 (1997); <u>see also</u> <u>Winter</u>, 555 U.S. at 22, 24.

4          "Injunctive relief is the remedy of choice for

5   trademark and unfair competition cases, since there is no

6   adequate remedy at law for the injury caused by a defendant's

7   continuing infringement." <u>Century 21 Real Estate Corp. v.</u>

8   <u>Sandlin</u>, 846 F.2d 1175, 1180 (9th Cir. 1988).  The Lanham Act

9   authorizes the court "to grant injunctions, according to the

10   principles of equity and upon such terms as the court may deem

11   reasonable . . . ."  15. U.S.C. § 1116(a).

12   III. <u>Analysis</u>

13          To succeed in a false advertisement claim under the

14   Lanham Act, a plaintiff must prove:

15

16      (1) [A] false statement of fact by the defendant in a
      commercial advertisement about its own or another's

17      product; (2) the statement actually deceived or has the
      tendency to deceive a substantial segment of its

18      audience; (3) the deception is material, in that it is
      likely to influence the purchasing decision; (4) the

19      defendant caused its false statement to enter interstate
      commerce; and (5) the plaintiff has been or is likely to

20      be injured as a result of the false statement, either by
      direct diversion of sales from itself to defendant or by

21      a lessening of the goodwill associated with its products.

22   <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1139 (9th

23   Cir. 1997).[5]

24

25       [5]   Lanham Act section 43(a)(1)--the false advertisement

26   statute--states:

27      Any person who, on or in connection with any goods or
      services, or any container for goods, uses in commerce

28      any word, term, name, symbol, or device, or any

1          The crux of plaintiffs and defendants' present dispute

2    is whether defendants' post-<u>Grange I</u> conduct constitutes false

3    advertisement.  "To demonstrate falsity within the meaning of the

4    Lanham Act, a plaintiff may show that the statement was literally

5    false, either on its face or by necessary implication, or that

6    the statement was literally true but likely to mislead or confuse

7    consumers."  <u>Id.</u>  "When evaluating whether an advertising claim

8    is literally false, the claim must always be analyzed in its full

9    

10         combination thereof, or any false designation of origin,
           false or misleading description of fact, or false or
11         misleading representation of fact, which--(A) is likely
           to cause confusion, or to cause mistake, or to deceive as
12         to the affiliation, connection, or association of such
           person with another person, or as to the origin,
13         sponsorship, or approval of his or her goods, services,
           or commercial activities by another person, or(B) in
14         commercial advertising or promotion, misrepresents the
           nature, characteristics, qualities, or geographic origin
15         of his or her or another person's goods, services, or
           commercial activities, shall be liable in a civil action
16         by any person who believes that he or she is or is likely
           to be damaged by such act."
17

18   15 U.S.C. § 1125.  Defendants challenge whether plaintiffs have
     shown that defendants engaged in "commercial advertisement about
19   its own or another's product" as required under <u>Southland Sod</u>
     <u>Farms</u>.  (Def's Opp'n at 6.)  <u>Southland Sod Farms</u> is merely a
20   paraphrase of Lanham Act section 43(a)(1), which, in its own
     terms, encompasses "false designation of origin, false or
21   misleading description of fact, or false or misleading
     representation of fact."  15 U.S.C. § 1125.  These terms
22   encompass defendants' alleged conduct.
23         Additionally, plaintiffs have satisfied section 43(a)'s
     "interstate commerce" requirement, as defendants' alleged
24   conduct, if true, tends to diminish the California State Grange's
     brand, which, in turn, diminishes the National Grange's brand.
25   <u>See</u> <u>Thompson Tank & Mfg. Co. v. Thompson</u>, 693 F.2d 991, 992-93
     (9th Cir. 1982) (holding that where defendant's activities
26   affected intrastate commerce which, in turn, affected interstate
     commerce, Lanham Act's "interstate commerce" requirement is
27   satisfied).

28

1  context."  Id.

2      A.   References to the History and Goodwill of the

3           California State Grange

4          Plaintiffs allege that defendants continue to refer to

5  themselves as "the same organization that has existed for

6  'decades'" in violation of the Lanham Act.  (See Pls.' Mem. at 9

7  ("Defendants have also continued to advertise that 'cities and

8  townships have grown up around our rural halls'; that the the

9  [sic] Defendant's organization has 'lobbyists in Sacramento and

10  boasts a long history of successful legislative advocacy'; that

11  the Defendants' organization was the first organization to

12  support and promote women as equal voting members' [sic]; and

13  that '[i]n these uncertain times our members find comfort and

14  security by returning to our roots and reaffirming principles and

15  goals set by the founders 140 years ago.'" (citing Komski Decl.

16  Ex. 2, CSG Website Screenshots)).)  They argue that "only the

17  California State Grange can claim the 140 years' [sic] of history

18  and goodwill associated with the organization" and that

19  "Defendant the California Guild recounts plaintiff's history, and

20  not its own."  (Id. (internal quotation marks and citation

21  omitted).)

22          Plaintiffs are already protected by an injunction

23  prohibiting defendants from "referencing their past affiliation

24  with [the National Grange] or any other entity whose name

25  contains the word 'Grange,' including representing themselves to

26  be the former California State Grange; successor to the

27  California State Grange; or formerly known as, trading as, or

28  doing business as the California State Grange."  (Apr. 20 Order

1    at 38.)  It appears, however, that defendants have found a way
2    around that prohibition by taking credit for the California State
3    Grange's history and achievements without referencing it by name.

4         The Lanham Act prohibits uncredited references to
5    another entity's history and achievements.  See, e.g., ITEX Corp.
6    v. Glob. Links Corp., 90 F. Supp. 3d 1158, 1171 (D. Nev. 2015)
7    (trade exchange's claim to forty-year history of unaffiliated
8    company constitutes false advertising); Riggs Inv. Mgmt. Corp. v.
9    Columbia Partners, L.L.C., 966 F. Supp. 1250, 1267 (D.D.C. 1997)
10   (investment company formed by former chairman of investment firm
11   made false advertisements when it represented itself as being
12   responsible for investment firm's investment record without
13   giving proper attribution).

14        But defendants have found a loophole around that too:
15   because the California Guild remains incorporated under the same
16   corporate papers that the California State Grange formerly
17   existed under, (see Pls.' Mem. at 3 (referencing "the 1946
18   corporation previously named the 'California State Grange,' now
19   named the 'California Guild,' Entity No. C0210454"), defendants
20   are technically correct when they refer to the California Guild
21   as an organization that has existed for "decades" and around
22   which "cities and townships have grown up."

23        Plaintiffs argue and provide testimony that such
24   statements nevertheless mislead the public as to constitute false
25   advertisement.  (See id. at 12.)  The problem with that argument
26   is under defendants' loophole, they have not misled the public:
27   their organization has existed for "decades" according to the
28   corporate papers filed in 1946, and the corporate entity in those

1   papers is the entity around which "cities and townships have

2   grown up."  While the court recognizes that defendants' claims to

3   history and achievements accrued prior to 1946 are undeniably

4   false, its hands are tied with respect to claims to history and

5   achievements accrued post-incorporation.  The court cannot, under

6   the Lanham Act's false advertisement statute, bar defendants from

7   telling the public something that is neither false nor

8   misleading.  See 15 U.S.C. § 1125(a)(1) (requiring "false

9   designation of origin, false or misleading description of fact,

10  or false or misleading representation of fact").

11      What guides the court's decision here is not ignorance

12  of reality or lack of ability to spot unfair play.  Defendants

13  have found a way to piggyback off the California State Grange's

14  decades of achievements because, for some reason, plaintiffs have

15  not taken effective action in the three years after the parties

16  disaffiliated to prevent defendants from occupying the California

17  State Grange's corporate charter.  The court cannot step in to

18  save plaintiffs here.

19      Because plaintiffs have not shown likelihood of success

20  on the merits with respect to defendants' references to the

21  California State Grange's post-1946 history and achievements, the

22  court cannot extend plaintiffs the full measure of relief they

23  seek.  The court is limited to enjoining defendants from

24  referencing history and achievements accrued by the California

25  State Grange prior to its incorporation.

26      With respect to such relief, plaintiffs have shown

27  likelihood of irreparable injury, as further uncredited

28  references to their history may permanently dilute their brand in

1  California.  (See Pls.' Reply at 10 ("[For] individuals, families

2  and communities, regardless of their position in the present

3  dispute, the California State Grange is understood as a network

4  of fraternal relationships that extend back for generations . . .

5  with personal friendships and a common belief in service to their

6  community.  For these members of the relevant public, the

7  categorical goodwill and common spirit driving the California

8  State Grange was not a mere attribute of the goods and services

9  offered by Plaintiffs, but was the sine quan non of Plaintiffs'

10 identity and reputation.") (Docket No. 83)); see also Century 21,

11 846 F.2d at 1180 ("[T]here is no adequate remedy at law for the

12 injury caused by a defendant's continuing infringement [in

13 trademark and unfair competition cases].").

14       The balance of equities favors plaintiffs, as

15 defendants "cannot complain of the harm that will befall [them]

16 when properly forced to desist from [their] infringing

17 activities."  Triad Sys. Corp. v. Se. Express Co., 64 F.3d 1330,

18 1338 (9th Cir. 1995).  The public has an interest in being able

19 to distinguish between the two entities.

20       B.   Interactions with Local Granges

21       Plaintiffs allege that defendants "continue to throttle

22 the California Granges into becoming members of Defendant

23 California Guild by falsely claiming that they must

24 'disaffiliate' with the California Guild in order to join [the

25 California State Grange]."  (Pls.' Mem. at 10.)  They also claim

26 that defendants "dispense false claims regarding the taxation of

27 California Grange, claiming that the local chapters are 'no

28 longer nonprofit, must pay taxes, cannot accept tax deductible

1    donations, or receive various grants.'"   (Id.)   Defendants

2    respond that they are entitled to make such statements because

3    the statements "may be true."   (Defs.' Opp'n at 13 (Docket No.

4    79).)

5            Plaintiffs have not proven that the statements are

6    false.   They carry the burden of persuasion on a motion for

7    preliminary injunction.   See Mazurek, 520 U.S. at 972.

8    Accordingly, the court will deny plaintiffs' request to enjoin

9    defendants from making such statements.

10        C.   Performance of Grange Functions

11           Plaintiffs request that the court enjoin defendants

12   from "exercising functions within the exclusive authority of the

13   California State Grange such as the collection of Grange dues;

14   disposition of assets formerly or currently owned by the

15   California State Grange, writing and cashing checks on the

16   account of the California State Grange; reorganization of local

17   [granges]; induction of new Grange members and installation of

18   Grange officers; [and] performance of Grange rituals."   (Pls.'

19   Proposed Order at 3.)   The court will address disposition of

20   Grange assets in Parts D through F of this section.

21           The April 20 Order already bars defendants from

22   "soliciting dues using the name 'Grange'" and "collecting checks

23   addressed to any entity whose name contains the word 'Grange.'"

24   (Apr. 20 Order at 37-38.)   As such, plaintiffs fail to prove

25   likelihood of irreparable harm with respect to collection of

26   Grange dues, as relief is already available to them pursuant to

27

28

14

1    the April 20 Order.[6]

2           With respect to reorganization of local granges and

3    induction of new Grange members and officers, to the extent

4    defendants engaged in such activities while purporting to act in

5    the official capacity of the California State Grange, such

6    activities would be in violation of the April 20 Order.  (See id.

7    (prohibiting defendants from "conducting business using the name

8    'Grange'" or "representing themselves to be the former California

9    State Grange [or] successor to the California State Grange").)

10   To the extent defendants were merely soliciting new guild members

11   and officers in their own capacity, such acts do not constitute

12   false advertisement.  As the April 20 Order offers plaintiffs

13   relief for acts defendants may have performed in Grange capacity,

14   no further injunction with respect to such activities is

15   necessary.

16          With respect to "performance of Grange rituals," the

17   court finds plaintiffs' request to be vague and overly broad and,

18

19          [6]    Defendants argue that plaintiffs' Grange II claims "are

20   barred under the doctrines of res judicata or collateral
     estoppel."  (Defs.' Opp'n at 6.)  While it is true that such

21   claims may be barred to the extent they arise out of the same
     transaction or occurrence as those in Grange I, plaintiffs'

22   allegations in the present case concern activities that occurred

23   subsequent to the commencement of Grange I.  (See, e.g., Pls.'
     Reply at 3 (citing defendants' July 30, 2016 email in which

24   defendants claim "[t]he California Guild is the same organization
     . . . for decades").)  In light of these differences, res

25   judicata and collateral estoppel do not apply to the claims

26   raised in this motion.  See L.A. Branch NAACP v. L.A. Unified
     Sch. Dist., 750 F.2d 731, 739 (9th Cir. 1984) ("Plaintiffs may

27   bring events occurring after the filing of the complaint into the
     scope of the litigation by filing a supplemental complaint . . .

28   but there is no requirement that plaintiffs do so.").

                                   15

1    therefore, unenforceable.  See Califano v. Yamasaki, 442 U.S.

2    682, 706 (1979) (holding that "injunctive relief should be no

3    more burdensome to the defendant than necessary to provide

4    complete relief to the plaintiffs"); Connecticut Gen. Life Ins.

5    Co. v. New Images of Beverly Hills, 321 F.3d 878, 883 (9th Cir.

6    2003) (defendant may seek modification of preliminary injunction

7    because injunction was "vague and ambiguous"); Lamb-Weston, Inc.

8    v. McCain Foods, Ltd., 941 F.2d 970, 974 (9th Cir. 1991)

9    ("Injunctive relief . . . must be tailored to remedy the specific

10   harm alleged.").

11        While performance of similar functions can contribute

12   to a violation of the Lanham Act, see, e.g., Herb Reed

13   Enterprises, Inc. v. Monroe Powell's Platters, LLC, 25 F. Supp.

14   3d 1316, 1325 (D. Nev. 2014) (finding trademark infringement

15   where one music group "market[ed] similar live vocal

16   performances" as another), plaintiffs' request encompasses

17   legitimate commercial activities such as soliciting new members

18   and providing services to farm communities.  Accordingly, the

19   court will deny plaintiffs' request to enjoin defendants'

20   "performance of Grange rituals."

21        D.   Intellectual Property

22        Plaintiffs seek to have defendants "deliver up all

23   business records, mailing lists, and proprietary data of the

24   California State Grange."  (Pls.' Mem. at 3.)  They allege that

25   defendants are using such records, lists, and data to falsely

26   advertise themselves to the public as being affiliated with the

27   California State Grange.  (See id. at 2.)  While plaintiffs may

28   be entitled to such records, data, and items as a proprietary

1    matter, the sole matter being considered in this motion is

2    whether defendants are using the property to commit false

3    advertisement.[7]

4            With respect to business records and mail lists,

5    plaintiffs have not provided evidence that defendants' alleged

6    use of such records and lists constitutes false advertisement.

7    The most discrete act plaintiffs allege defendants have taken

8    with respect to such records and lists is "us[ing] the

9    proprietary mailing lists of the California State Grange . . .

10   albeit under different names" to--presumably--contact Grange

11   members.  (Id.)  Contacting Grange members with proper

12   identification is not, in itself, false advertisement.  See

13   Southland Sod Farms, 108 F.3d at 1139 (requiring a "literally

14   false," "mislead[ing]," or "confus[ing]" statement for a false

15   advertisement finding).

16           With respect to proprietary data, plaintiffs have

17   provided evidence that defendants are using website logos,

18   images, and backgrounds that are nearly identical to plaintiffs'

19   to cause confusion to the public.  (See Komski Decl. at 8-12

20   (comparing screenshots of defendants' and plaintiffs' websites).)

21   Such use may constitute violation of Lanham Act section 43(a)(1).

22   See GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206 (9th

23   Cir. 2000) (finding likelihood of success on trademark

24   infringement claim where defendant used "glaringly similar" logo

25   as plaintiff's); CJ Prod. LLC v. Snuggly Plushez LLC, 809 F.

26

27           [7]  Plaintiffs' proprietary claims appear more suitably
     considered under the doctrines of trespass and conversion, which
28   they have alleged in their Complaint, (see FAC at 50-51).

                                  17

1    Supp. 2d 127, 161 (E.D.N.Y. 2011) (holding that plaintiff

2    established likelihood of success on trademark infringement claim

3    where defendant's website "looks substantially similar to the

4    plaintiffs' website"); Gmes, LLC v. Line of Sight Commc'ns, Inc.,

5    No. 2:16-CV-04085-NKL, 2016 WL 3566254, at *5 (W.D. Mo. June 27,

6    2016) (finding plaintiff sufficiently pled unfair competition

7    where defendant "revised its website to look substantially

8    similar" to plaintiff's).

9         However, plaintiffs' request, as phrased in their

10   proposed order, is overly broad.  It encompasses far more than

11   the website images they allege defendants are using to confuse

12   the public.  Under their proposed order, plaintiffs would be

13   entitled to data for which they have not shown defendants' use in

14   false advertising schemes.  Such overbreadth is grounds for

15   denial.  See Califano, 442 U.S. at 706; Lamb-Weston, 941 F.2d at

16   974.  Accordingly, the court will not grant plaintiffs' request

17   for return of intellectual property at this time.

18        E.   Tangible Property

19        Plaintiffs seek return of "any Grange regalia[,]

20   paraphernalia," "tangible things bearing the name 'Grange,'"

21   "equipment, fixtures," and "other real and personal property."

22   (Pls.' Proposed Order at 3-4.)  They allege that defendants are

23   "performing Grange rituals and using Grange paraphernalia in such

24   rituals, and, in general, functioning as a Grange."  (Decl. of

25   Betsy Huber at 8.)  As discussed above, while plaintiffs may be

26   entitled to such property as a proprietary matter, the sole

27   matter being considered here is whether defendants are using the

28   items to commit false advertisement.

18

1    To the extent defendants are confusing the public by
2  "performing Grange rituals . . . using Grange paraphernalia,"
3  plaintiffs already have an avenue of relief via the April 20
4  order, which bars defendants from "conducting business using the
5  name 'Grange'" or "representing themselves to be the former
6  California State Grange [or] successor to the California State
7  Grange." (April 20 Order at 37-38.) Accordingly, the court will
8  not grant plaintiffs' request for return of tangible property at
9  this time.

10    F.    Alleged Misappropriation of Grange Funds

11    Plaintiffs request that the court "restrain[]
12 Defendants from further misappropriation and dissipation of
13 assets and accounts held in the name of the California State
14 Grange, the California Guild, or the 1946 [corporation]." (Pls.'
15 Mem. at 3.) They allege that defendants continue to engage in
16 schemes--sometimes with the aid of local granges--to
17 misappropriate their assets. (Id. at 10.)

18    The April 20 Order bars defendants and their "agents,
19 affiliates, assigns, and any party acting in concert with [them]"
20 from "using bank accounts or other financial accounts under any
21 name containing the word 'Grange'" or "endorsing, signing, or
22 executing any document, lease, instruction, or financial
23 instrument using any name containing the word 'Grange.'" (Apr.
24 20 Order at 37-38.) That provision provides plaintiffs the
25 protection they seek. Beyond that, plaintiffs have not proven
26 that freezing defendants' assets is necessary to prevent
27 unavailability of relief following final judgment in this case.
28 Accordingly, the court will deny plaintiffs' request with respect

1    to defendants' alleged misappropriation of Grange funds.

2         G.   Grange Buildings and Former Telephone Numbers

3              Plaintiffs ask the court to evict defendants from the

4    buildings alleged to belong to the California State Grange and

5    require defendants to disconnect all telephones numbers formerly

6    registered to the California State Grange.  (Pls. Mem. at 3.)

7    Given defendants' deceptive tactics throughout these and previous

8    proceedings, (see, e.g., Defs.' Reply to Pls.' Opp'n to Defs.'

9    Mot. to Dismiss at 1 (referring to selves as organization

10   "created in 1873," "provid[ing] 160 years of service," and

11   "oldest agricultural organization in California") (Docket No.

12   40)), their use of plaintiffs' buildings and former telephone

13   numbers would serve to further create a false impression among

14   the public that they are affiliated with or successors to the

15   California State Grange.  Cf. Delaware Valley Fin. Grp., Inc. v.

16   Principal Life Ins. Co., 640 F. Supp. 2d 603, 614 (E.D. Pa. 2009)

17   (considering defendants' use of "same offices" and "same

18   telephone numbers" in deciding Lanham Act unfair competition

19   claim).  As explained in Part A of this section, such impression

20   irreparably harms plaintiffs and the balance of equities and

21   public interest favor plaintiffs.

22             That being said, requiring defendants to vacate the

23   office buildings they presently occupy constitutes a drastic

24   measure at the preliminary injunction stage.  Such measures are

25   disfavored.  See Anderson v. United States, 612 F.2d 1112, 1114

26   (9th Cir. 1979) ("Mandatory preliminary relief, which goes well

27   beyond simply maintaining the status quo . . . is particularly

28   disfavored . . . .").  As such, the court will settle at this

                                   20

1   stage for the more measured solution of requiring defendants to

2   display a disclaimer.  That measure is discussed below in Part I.

3          Requiring defendants to cease using plaintiffs' old

4   telephone numbers, on the other hand, is reasonable.

5   Accordingly, the court will grant that request, subject to the

6   terms stated in the conclusion of this Order.

7          H.   Other Alleged Misrepresentations

8          As a final catchall, plaintiffs ask the court to

9   prohibit defendants from "misrepresenting that they are the

10  successors to the California State Grange, or the authorized

11  representatives of the California Granges, or of the 1946

12  corporation."  (Pls.' Mem. at 3.)  They seek a declaration that

13  plaintiffs are "the exclusive authorized representatives of the

14  California Granges[,] . . . the exclusive authorized

15  representatives of the 1946 corporation[, and] . . . the

16  exclusive owner of all assets and accounts held, registered or

17  recorded in the name of the California State Grange and/or

18  California Guild."  (Pls.' Proposed Order at 2.)

19         The April 20 Order already prohibits defendants from

20  "representing themselves to be the former California State

21  Grange; successor to the California State Grange; or formerly

22  known as, trading as, or doing business as the California State

23  Grange."  (Apr. 20 Order at 38.)  That provision covers any claim

24  defendants may make that they are "authorized representatives of

25  the California Granges."  The court declines to extend these

26  prohibitions to include defendants' references to their corporate

27  registration.

28         As for plaintiffs' proposed declaration, such relief is

1    not required to prevent harm to plaintiffs in light of the relief

2    they are already entitled to under this Order, the April 20

3    Order, and the August 18 Order.  Accordingly, the court will deny

4    that request.

5        I.   Use of a Disclaimer

6            Finally, plaintiffs request that the court order

7    defendants to "commence use of a prominent disclaimer in all

8    business, commercial, official and public communications, for a

9    period of time extending until two years following a final order

10   in this case or such other such time as may be judged appropriate

11   by the Court, stating: NOT AFFILIATED WITH THE CALIFORNIA STATE

12   GRANGE."  (Pls.' Proposed Order at 5.)

13           While such orders are not always necessary, they are

14   well within the discretion of the court.  See Consumers Union of

15   U.S., Inc. v. Gen. Signal Corp., 724 F.2d 1044, 1053 (2d Cir.

16   1983) ("Disclaimers are a favored way of alleviating consumer

17   confusion as to source or sponsorship.  Absolute prohibitions of

18   speech as provided for in the instant preliminary injunction are

19   improper where there is any possibility that an explanation or

20   disclaimer will suffice." (internal citations omitted)); see also

21   Mattel, Inc. v. MCA Records, Inc., 28 F. Supp. 2d 1120, 1143

22   (C.D. Cal. 1998) (citing Consumers Union favorably), aff'd, 296

23   F.3d 894 (9th Cir. 2002); Playboy Enters., Inc. v. Welles, 7 F.

24   Supp. 2d 1098, 1104 (S.D. Cal.) (citing Consumers Union

25   favorably), aff'd, 162 F.3d 1169 (9th Cir. 1998).

26           Here, because the court has not precluded defendants

27   from claiming credit for the history and achievements of the

28   corporate entity formerly named the California State Grange from

1  1946 to 2013, unless the public is notified that defendants are

2  not in fact the California State Grange there would be a strong

3  probability of confusion.  A disclaimer is therefore necessary on

4  any such communication in order to avoid the inference that

5  defendant is in fact still the California State Grange.

6      Accordingly, on all business, commercial, official,

7  and public communications discussing the history or achievements

8  of the corporate entity formerly named the California State

9  Grange the court will require defendants to state or display a

10  prominent disclaimer stating: "NOT AFFILIATED WITH THE CALIFORNIA

11  STATE GRANGE."[8]

12  IV.  <u>Conclusion</u>

13      IT IS THEREFORE ORDERED that plaintiffs THE NATIONAL

14  GRANGE and THE CALIFORNIA STATE GRANGE'S motion for preliminary

15  injunction be, and the same hereby is, GRANTED IN PART and DENIED

16  IN PART as follows:

17      (1)  defendants the CALIFORNIA STATE GRANGE d/b/a

18          "California Guild," ROBERT MCFARLAND, and their agents,

19          affiliates, and assigns, and any party acting in

20          concert with them or their agents, affiliates, or

21          assigns, are enjoined from referencing any history or

22          goodwill accrued by the California State Grange prior

23          to October 7, 1946, in any advertising, promotional,

24

25      [8]  Defendants have already used a disclaimer stating they

26  "are not affiliated with . . . the Grange of the State of
   California's Patrons of Husbandry Chartered."  (Komski Decl. at

27  7-8.)  Plaintiffs allege that the "name is unknown to the
   California Granges."  (<u>Id.</u>)  The court sees no harm in making the

28  disclaimer clearer.

1   commercial, official, or public communications;

2   (2)   within seven (7) days from the date of this Order,

3         defendants shall cease using all telephone numbers used

4         by defendants that were ever registered to the

5         California State Grange, and refrain from further use

6         of such telephone numbers in any business, commercial,

7         or official communications;

8   (3)   within seven (7) days from the date of this Order,

9         defendants shall, until such time as the court deems

10        proper, commence use of a prominent disclaimer on all

11        business, commercial, official, and public

12        communications discussing the history or achievements

13        of the corporate entity formerly named the California

14        State Grange stating: "NOT AFFILIATED WITH THE

15        CALIFORNIA STATE GRANGE"; and

16  (4)   plaintiffs' remaining requests are DENIED.

17  Dated:  September 23, 2016

18

19  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28