1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11                            ----oo0oo----

12  THE NATIONAL GRANGE OF THE          CIV. NO. 2:16-201 WBS DB
    ORDER OF PATRONS OF
13  HUSBANDRY, a District of            MEMORANDUM AND ORDER RE: MOTION
    Columbia nonprofit                  TO DISMISS
14  corporation, and THE
    CALIFORNIA STATE GRANGE, its
15  chartered California chapter,

16                Plaintiffs,

17       v.

18
    CALIFORNIA STATE GRANGE d/b/a
19  "California Guild," a
    California corporation, and
20  ROBERT McFARLAND, a
    California resident,
21
                  Defendants.
22

23                            ----oo0oo----

24

25            Plaintiffs the National Grange and the California State

26  Grange (collectively "plaintiffs") brought this action against

27

28

                                    1

1   defendants the California Guild[1] and Robert McFarland

2   (collectively "defendants"), alleging that defendants are falsely

3   representing themselves to be the same organization as or

4   responsible for the history and achievements of the California

5   State Grange.  (First Am. Compl. ("FAC") (Docket No. 75).)

6   Presently before the court is defendants' motion to dismiss

7   plaintiffs' first amended Complaint or, in the alternative, for a

8   more definite statement of claims.  (Defs.' Mot. to Dismiss

9   ("Defs.' Mot.") (Docket No. 77).)

10  I.   Factual and Procedural Background

11       The National Grange is a nonprofit fraternal

12  organization founded in 1867 to promote the interests of rural

13  America and agriculture.  (FAC ¶ 15.)  It provides goods and

14  services to agricultural communities and is involved in some

15  2,100 towns across the country.  (Id.)

16       The National Grange created the California State Grange

17  as its California affiliate in 1873.  (Id. ¶ 16.)  As a chartered

18  affiliate, the California State Grange collects dues from local

19  granges across California and turns over a portion of those dues

20  to the National Grange.  (Id.)  In 1946, the California State

21  Grange registered as a corporation with the California Secretary

22  of State.  (Id.)  The California State Grange elected McFarland

23  as its leader in 2009.  (Id. ¶ 17.)

24       In 2012, disputes arose between the National Grange and

25  _____

26       [1]   A central issue in this and previous proceedings is
    whether defendants may refer to themselves as the "California
27  State Grange."  Consistent with the court's rulings in previous
    orders, all references to the "California State Grange" in this
28  Order refer to plaintiffs, not defendants.

2

1    members of the California State Grange.  (Id.)  As a result, the

2    National Grange revoked the California State Grange's membership

3    and the two sides disaffiliated in 2013.  (See id.; Pls.' Mot.

4    for Prelim. Inj., Mem. ("Pls.' Mem.") at 1 (Docket No. 76-1).)

5    Members of the disaffiliated chapter, led by McFarland, continued

6    to exist as a separate entity under the corporate charter filed

7    in 1946.  (Pls.' Mem. at 3-4.)  The National Grange chartered a

8    new California State Grange in 2014.  (Id. at 7.)  What resulted

9    after the split, then, were two California entities: a newly

10   chartered California State Grange (i.e., along with the National

11   Grange, plaintiffs to this action) and a disaffiliated entity led

12   by McFarland (i.e., defendants).

13         After the split, defendants continued to use the

14   registered corporate name "California State Grange" and represent

15   themselves publically as the California State Grange.  (Id. at 3-

16   4.)  In March 2014, the National Grange filed an action against

17   the disaffiliated entity for federal trademark infringement,

18   trademark dilution, trademark counterfeiting, and false

19   advertisement under the Lanham Act ("Grange I").  (Id. at 4.)

20         On July 14, 2015, this court granted the National

21   Grange summary judgment on its trademark infringement and false

22   advertisement claims.[2]  Nat'l Grange of the Order of Patrons of

23   Husbandry v. Cal. State Grange, Civ. No. 2:14-676 WBS DAD, 115 F.

24   Supp. 3d 1171, 1183 (E.D. Cal. 2015).  The court permanently

25

26   _____

           [2]   The National Grange voluntarily dismissed its remaining
27   Grange I claims with prejudice.  Nat'l Grange of the Order of
     Patrons of Husbandry v. Cal. State Grange, Civ. No. 2:14-676 WBS
28   AC, 2016 WL 1587193, at *3 n.2 (E.D. Cal. Apr. 20, 2016).

1   enjoined the disaffiliated entity from using the word "Grange,"

2   but declined to extend that prohibition to include the words

3   "Granger," "CSG," and "CG" because the National Grange did not

4   expressly seek such relief in its Grange I complaint.  See Nat'l

5   Grange of the Order of Patrons of Husbandry v. Cal. State Grange,

6   Civ. No. 2:14-676 WBS DAD, 2015 WL 5813681, at *2-*3 (E.D. Cal.

7   Sept. 30, 2015), modified, Civ. No. 2:14-676 WBS AC, 2016 WL

8   1587193 (E.D. Cal. Apr. 20, 2016).)  The parties have appealed

9   Grange I to the Ninth Circuit, where it is currently pending.

10  Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State

11  Grange, Civ. No. 2:14-676 WBS AC, 2016 WL 1587193 ("Apr. 20

12  Order"), at *4 (E.D. Cal. Apr. 20, 2016).

13          After Grange I, the disaffiliated entity changed its

14  corporate name to the "California Guild."  (Pls.' Mem. at 6.)

15  Since that time, it has continued to publicly refer to itself as

16  "CSG" and "[f]ormerly the California State Grange."  (Decl. of Ed

17  Komski ("Komski Decl.") Ex. 2, CSG Website Screenshots (Docket

18  No. 54-3).)

19          Simultaneous to litigation in this court has been

20  litigation in the California Superior Court over ownership of the

21  California State Grange's property.  (Pls.' Mem. at 6.)  On

22  August 18, 2015, the Superior Court entered judgment in favor of

23  the National Grange and ordered that the California Guild

24  "transfer to the Newly Chartered State Grange all Grange property

25  in its possession or control as of the date its Charter was

26  revoked."  (FAC Ex. 1, State Ct. Docs. at 33 (Docket No. 75-1).)

27  Defendants have appealed that order as well.  (FAC ¶ 140.)

28          On February 1, 2016, plaintiffs brought the present

1 action against defendants.  (Compl. (Docket No. 1).)  Plaintiffs

2 allege that since Grange I, defendants have continued to engage

3 in activities that damage their reputation and goodwill, such as

4 taking credit for the California State Grange's history and

5 achievements, misappropriating Grange trademarks and copyrights,

6 spreading false rumors about Grange membership, and

7 misrepresenting themselves to be successors to the California

8 State Grange.  (See FAC ¶¶ 18, 20, 24, 45.)

9         Plaintiffs bring the following causes of action against

10 defendants: (1) false designation of origin under the Lanham Act,

11 15 U.S.C. § 1125(a)(1)(A); (2) false advertisement under the

12 Lanham Act, 15 U.S.C § 1125(a)(1)(B); (3) false advertisement

13 under the California Business and Professional Code, Cal. Bus.

14 Prof. Code § 17500; (4) trademark infringement under the Lanham

15 Act, 15 U.S.C. § 1114; (5) infringement of unregistered logo and

16 trade dress under the Lanham Act, 15 U.S.C § 1125(a); (6)

17 copyright infringement under federal law, 17 U.S.C. § 106; (7)

18 trade libel under California common law; (8) intentional

19 interference with contractual relations under California common

20 law; (9) trespass under California common law; and (10)

21 conversion under California common law.  (Id. at 38-51.)

22 Defendants now move to dismiss plaintiffs' amended Complaint in

23 its entirety or, in the alternative, for a more definite

24 statement of claims.  (Defs.' Mot., Mem. ("Defs.' Mem.") at 2-3.)

25 II.  Motion to Dismiss

26         On a motion to dismiss for failure to state a claim

27 under Rule 12(b)(6), the court must accept the allegations in the

28 pleadings as true and draw all reasonable inferences in favor of

1    the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),

2    overruled on other grounds by Davis v. Scherer, 468 U.S. 183

3    (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a

4    motion to dismiss, a plaintiff must plead "only enough facts to

5    state a claim to relief that is plausible on its face."  Bell

6    Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

7         "While a complaint attacked by a Rule 12(b)(6) motion

8    to dismiss does not need detailed factual allegations, a

9    plaintiff's obligation to provide the 'grounds' of his

10   'entitle[ment] to relief' requires more than labels and

11   conclusions . . . ."  Twombly, 550 U.S. at 555 (citation

12   omitted).  "Threadbare recitals of the elements of a cause of

13   action, supported by mere conclusory statements, do not suffice,"

14   and "the tenet that a court must accept as true all of the

15   allegations contained in a complaint is inapplicable to legal

16   conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

17        A.   False Designation of Origin, False Advertisement, and

18             Trademark Infringement Under the Lanham Act

19        Five of plaintiffs' ten causes of action--false

20   designation of origin, federal false advertisement, state false

21   advertisement, infringement of unregistered logo and trade dress,

22   and trademark infringement--arise under or require substantially

23   the same proof as section 43(a) of the Lanham Act ("section

24   43(a)"), 15 U.S.C. 1125(a).  False designation of origin arises

25   under section 43(a)(1)(A), and federal false advertisement arises

26   under section 43(a)(1)(B).  Lexmark Int'l, Inc. v. Static Control

27   Components, Inc., 134 S. Ct. 1377, 1384 (2014) ("Section 1125(a)

28   thus creates two distinct bases of liability: false association,

1   § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B).").

2          False advertisement under the California Business and

3   Professional Code requires the same proof as federal false

4   advertisement.  See Homeland Housewares, LLC v. Euro-Pro

5   Operating LLC, No. CV 14-03954 DDP MANX, 2015 WL 476287, at *2

6   (C.D. Cal. Feb. 5, 2015) ("[F]alse advertising claims under

7   California's Unfair Competition Act . . . are 'substantially

8   congruent' to claims made under the Lanham Act.  Therefore, the

9   Court analyzes the state and federal false advertising claims

10  together.") (internal citation omitted)).

11         Trademark infringement under section 32(1) of the

12  Lanham Act requires the same proof as false designation of

13  origin.[3]  See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,

14  174 F.3d 1036, 1046 n.6 (9th Cir. 1999) ("The same standard

15  [embodied in section 32(1) of the Lanham Act] is embodied in

16  section 43(a)(1) of the Lanham Act . . . ."); Grey v. Campbell

17  Soup Co., 650 F. Supp. 1166, 1173 (C.D. Cal. 1986) ("The tests

18  for infringement of a federally registered mark under § 32(1) . .

19  . [and] unfair competition under § 43(a), 15 U.S.C. § 1125(a) . .

20  . are the same"), aff'd, 830 F.2d 197 (9th Cir. 1987).

21         "Infringement of unregistered logo and trade dress"

22  appears to be the same claim as false designation of origin.

23  _____

24         [3]   The key distinction between trademark infringement and
    false designation of origin is that the former "applies to
25  federally registered marks" while the latter applies "to both
    registered and unregistered trademarks."  Brookfield Commc'ns,
26  Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1046 n.6 (9th Cir.
    1999).  That distinction is not relevant here because plaintiffs
27  have alleged infringement of both registered and unregistered
    trademarks.  (See FAC ¶¶ 125, 135.)
28
                                    7

1  Plaintiffs cite section 43(a) as the statutory basis for

2  "infringement of unregistered logo and trade dress," but the

3  court is not aware of any case holding that it is a separate

4  cause of action from false designation of origin.[4]  Moreover,

5  plaintiffs concede that to the extent "infringement of

6  unregistered logo and trade dress" is not alleged with

7  specificity, it "is subsumed by the false designation of origin

8  claim."  (Pls.' Opp'n at 23.)  Accordingly, the court will

9  dismiss plaintiffs' claim for "infringement of unregistered logo

10  and trade dress."

11       The only section 43(a) claims that the court must

12  decide whether plaintiff plausibly alleged, therefore, are false

13  designation of origin and false advertisement.

14            1.   <u>False Designation of Origin</u>

15       The Ninth Circuit has held that a false designation of

16  origin claim under section 43(a)(1)(A) requires proof that

17  defendants "(1) use[d] in commerce (2) any word, false

18  designation of origin, false or misleading description, or

19  representation of fact, which (3) is likely to cause confusion or

20  misrepresents the characteristics of his or another person's

21  goods or services."  <u>Freecycle Network, Inc. v. Oey</u>, 505 F.3d

22  898, 902 (9th Cir. 2007); <u>see also</u> <u>Luxul Tech. Inc. v. Nectarlux,</u>

23  <u>LLC</u>, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (holding the

24  same).  "'[C]ommerce' as used in the Lanham Act . . . include[s]

25

26  _____

27       [4]   Plaintiffs' confusion appears to stem from the fact
    that false designation of origin "protects against infringement
    of unregistered marks and trade dress as well as registered
28  marks."  <u>Brookfield</u>, 174 F.3d at 1047 n.8.

1   'all commerce which may lawfully be regulated by Congress.'  It

2   is well settled that so defined 'commerce' [means] interstate

3   commerce." Thompson Tank & Mfg. Co. v. Thompson, 693 F.2d 991,

4   993 (9th Cir. 1982).

5        The Ninth Circuit has held that interstate commerce for

6   these purposes "includes intrastate commerce which 'affects'

7   interstate commerce." Id. at 992-93.  Additionally, courts in

8   this circuit have held that communications made on public

9   websites are made in interstate commerce.  See United States v.

10  Sutcliffe, 505 F.3d 944, 952-53 (9th Cir. 2007) ("[T]he Internet

11  is an instrumentality and channel of interstate commerce."

12  (internal citation omitted).); Homeland Housewares, LLC v. Euro-

13  Pro Operating LLC, No. CV 14-03954 DDP MANX, 2015 WL 476287, at

14  *2 (C.D. Cal. Feb. 5, 2015) ("[P]lacing a [product] review on a

15  widely-available website is placing a statement into interstate

16  commerce . . . .").  Plaintiffs allege that defendants are

17  representing, via public websites, that they are the same

18  organization as or responsible for the history and achievements

19  of the California State Grange. (See FAC ¶¶ 20-26, 69.)  Such

20  representations are allegedly resulting in "loss of goodwill" to

21  the California State Grange and, in turn, the National Grange.

22  (Id. ¶¶ 78, 83.)  Because defendants' representations are

23  available on public websites and allegedly damaging the National

24  Grange's reputation, they are made in interstate commerce.

25        Defendants also challenge whether the California State

26  Grange and California Guild can be said to engage in "commerce"

27  to begin with. (See Defs.' Mem. at 7.)  According to defendants,

28  the two groups are "non-profit corporations that do not engage in

9

1   commerce," which precludes coverage under the Lanham Act.   (Id.)

2   Contrary to that argument, federal courts in this circuit and

3   others have held that "the mere fact that a speaker is a

4   nonprofit organization does not preclude its speech from being

5   commercial speech, or 'commercial advertising or promotion'

6   within the meaning of section 43(a)."   Nat'l Servs. Grp., Inc. v.

7   Painting & Decorating Contractors of Am., Inc., No. SACV06-

8   563CJC(ANX), 2006 WL 2035465, at *4 (C.D. Cal. July 18, 2006).

9   In keeping with that understanding, federal courts routinely hold

10  nonprofit entities liable under section 43(a).   See, e.g., Comm.

11  for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814, 822 (9th Cir.

12  1996) (applying section 43(a) to "two non-profit advocacy

13  groups"); Nat'l Servs. Grp., 2006 WL 2035465, at *4 (holding that

14  "nonprofit trade organization that represents the interests of

15  painters and decorators" may be liable under section 43(a));

16  Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc., 94 F. Supp.

17  2d 566, 568, 577 (E.D. Pa. 1999) (applying section 43(a) to

18  nonprofit religious groups).   Accordingly, defendants' "commerce"

19  argument fails.

20          Plaintiffs allege that defendants are making

21  representations that confuse the public as to the identity of the

22  California State Grange and California Guild.   According to

23  plaintiffs, defendants are: (1) taking credit for the California

24  State Grange's history and achievements,[5] (see FAC ¶¶ 20-26, 42,

25  _____

26      [5]    Specifically, plaintiffs allege that defendants are
     making statements along the lines of the following:

27

28      The CSG . . . is the oldest agricultural organization in
        California, started in 1870.  Cities and townships have

76): (2) copying logos, backdrop, and content from the California State Grange's website as to make their website look identical to plaintiffs' website, (see id. ¶¶ 18, 24-25, 30); and (3) violating the court's April 20 Order by continuing to use the word "Grange" in public communications, soliciting Grange dues, using Grange bank accounts, and performing Grange rituals using Grange regalia, (see id. ¶¶ 45-47, 68, 75-76, 112, 125, 128). Such activities, according to plaintiffs, have "caused actual confusion among at least fifty of Plaintiffs' members" and resulted in some members disaffiliating from plaintiffs to join defendants.[6]  (Id. ¶¶ 75, 79, 130.)

---

       grown up around our rural halls . . . .  The CSG has lobbyists in Sacramento and boasts a long history of successful legislative advocacy.  The CSG was the first organization to support and promote women as equal voting members. . . .  In these uncertain times our members find comfort and security by returning to our roots and reaffirming principles and goals set by the founders 140 years ago.

(FAC ¶ 20 (internal citation omitted).)  As explained in the court's September 23, 2016 Order partially granting plaintiffs' motion for preliminary injunction, while defendants are technically correct when they refer to themselves as having existed since 1946 because they continue to occupy the California State Grange's 1946 corporate charter, at least some of their other statements--namely, their references to a history prior to 1946--are undeniably false.  (See Sept. 23, 2016 Order at 12 (Docket No. 93).)

     [6]   Defendants note that they use disclaimers that refer to the California State Grange as "Grange of California Order of Patrons of Husbandry."  (Defs.' Mem. at 15.)  Plaintiffs allege that "the name 'Grange of the State of California's Patrons of Husbandry Chartered' is unknown to the California Granges," however.  (FAC ¶ 22.)  Accordingly, defendants' disclaimers do not defeat plaintiffs' allegations of confusion among local granges.

1    Uncredited references to another entity's history and

2  achievements may constitute "false or misleading" representations

3  as to give rise to liability under section 43(a).  See, e.g.,

4  ITEX Corp. v. Glob. Links Corp., 90 F. Supp. 3d 1158, 1171 (D.

5  Nev. 2015) (trade exchange's claim to forty-year history of

6  unaffiliated company violates section 43(a)); Riggs Inv. Mgmt.

7  Corp. v. Columbia Partners, L.L.C., 966 F. Supp. 1250, 1267

8  (D.D.C. 1997) (investment company violated section 43(a) when it

9  represented itself as responsible for another firm's investment

10  record).  Use of substantially similar website logos and

11  backgrounds may also give rise to liability under section 43(a).

12  See, e.g., GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206

13  (9th Cir. 2000) (holding that plaintiff is likely to succeed on

14  section 43(a) claim where defendant used "glaringly similar"

15  logo); CJ Prod. LLC v. Snuggly Plushez LLC, 809 F. Supp. 2d 127,

16  161 (E.D.N.Y. 2011) (holding that plaintiff is likely to succeed

17  on section 43(a) claim where defendant's website "looks

18  substantially similar" to plaintiffs' website).

19    The same is true of performance of similar functions,

20  see, e.g., Herb Reed Enterprises, Inc. v. Monroe Powell's

21  Platters, LLC, 25 F. Supp. 3d 1316, 1325 (D. Nev. 2014) (finding

22  section 43(a) liability where one music group "market[ed] similar

23  live vocal performances" as another), and misappropriation of

24  trademarks, see Brookfield, 174 F.3d at 1046 n.6 (proving

25  trademark infringement proves violation of section 43(a)).[7]

26

27    [7]  The cases cited here are false advertisement and
    trademark infringement cases.  But their 'false or misleading'
28  analysis is applicable to false designation of origin because all

12

1    Because plaintiffs have plausibly alleged that

2   defendants are making false or misleading representations in

3   interstate commerce that confuse the public, they have stated

4   plausible claims for false designation of origin and, by

5   extension, trademark infringement.

6         2.   False Advertisement

7         The Ninth Circuit has held that a false advertisement

8   claim under section 43(a)(1)(B) requires: "(1) a false statement

9   of fact by the defendant in a commercial advertisement about its

10  own or another's product[8]; (2) the statement actually deceived or

11  has the tendency to deceive a substantial segment of its

12  audience; (3) the deception is material, in that it is likely to

13  influence the purchasing decision; (4) the defendant caused its

14  false statement to enter interstate commerce; and (5) the

15  plaintiff has been or is likely to be injured as a result of the

16  false statement, either by direct diversion of sales from itself

17

18  _____

19  three types of claims require proof of "false or misleading
    representation of fact" under section 43(a)(1).  See Lexmark
    Int'l, 134 S. Ct. at 1384 (holding that false designation of
20  origin and false advertisement each arise under section
    43(a)(1)); Luxul Tech, 78 F. Supp. 3d at 1170 ("To establish a
21  claim for either trademark infringement or false designation of
    origin under § 43(a)(1)(A) . . . a plaintiff must prove that the
22  defendant (1) used in commerce (2) any word, false designation of
    origin, false or misleading description, or representation of
23  fact . . . .").

24
        [8]   "False" for these purposes means false or misleading.
25  See Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139
    (9th Cir. 1997) ("To demonstrate falsity within the meaning of
26  the Lanham Act, a plaintiff may show that the statement was
    literally false . . . or that the statement was literally true
27  but likely to mislead or confuse consumers.").

28

1    to defendant or by a lessening of the goodwill associated with

2    its products."   Southland Sod Farms v. Stover Seed Co., 108 F.3d

3    1134, 1139 (9th Cir. 1997).

4           As explained in the 'false designation of origin'

5    section, plaintiffs have plausibly alleged that defendants are

6    making false or misleading representations in interstate commerce

7    that is causing confusion among local granges, some members to

8    disaffiliate from plaintiffs, and loss of goodwill.   That is

9    enough to satisfy each prong of Southland Sod Farms.

10   Accordingly, plaintiffs have stated plausible claims for false

11   advertisement under the Lanham Act and, by extension, section

12   17500 of the California Business and Professional Code.

13              3.   Defendants' Defenses

14          Defendants raise several defenses to plaintiffs' Lanham

15   Act claims.   First, they argue that the representations

16   plaintiffs attribute to them constitute protected political

17   speech under the First Amendment.   (Defs.' Mem. at 7-11.)   It is

18   well established that the "First Amendment does not protect false

19   or misleading commercial speech," however.   Amarin Pharma, Inc.

20   v. U.S. Food & Drug Admin., 119 F. Supp. 3d 196, 228 (S.D.N.Y.

21   2015); see also Virginia State Bd. of Pharmacy v. Virginia

22   Citizens Consumer Council, Inc., 425 U.S. 748, 771-72 (1976)

23   ("Untruthful speech, commercial or otherwise, has never been

24   protected for its own sake.").   At least some statements and

25   representations plaintiffs attribute to defendants are "false or

26   misleading" under the authorities cited above.   See ITEX Corp.,

27   90 F. Supp. 3d at 1171; Riggs Inv. Mgmt. Corp., 966 F. Supp. at

28   1267; GoTo.com, Inc., 202 F.3d at 1206; CJ Prod. LLC, 809 F.

1    Supp. 2d at 161; Herb Reed Enterprises, 25 F. Supp. 3d at 1325;

2    Brookfield, 174 F.3d at 1046 n.6.  That speech is not protected.

3    Accordingly, the court will not dismiss plaintiffs' claims on

4    First Amendment grounds.

5         Second, defendants cite to cases holding that mere

6    "criticism" and "opinion" cannot serve as bases of liability

7    under the Lanham Act.  (Defs.' Mem. at 7-11.)  Those cases are

8    easily distinguishable because defendants' alleged statements are

9    not mere criticism or opinion, but assertions of fact.  (See,

10   e.g., FAC ¶ 20 (defendants claim that "[t]he CSG . . . is the

11   oldest agricultural organization in California, started in 1870.

12   . . . [That t]he CSG was the first organization to support and

13   promote women as equal voting members. . . . [That their] roots

14   and reaffirming principles and goals [were] set by the founders

15   140 years ago." (emphases added)).)  If defendants made clear to

16   the public that their statements taking credit for plaintiffs'

17   history and achievements were merely statements of opinion, their

18   argument may have merit.  But under the facts alleged by

19   plaintiffs, that is not the case.

20        Third, defendants argue that their representations are

21   protected under the Noerr-Pennington doctrine, which holds that

22   "those who petition any department of the government for redress

23   are generally immune from statutory liability for their

24   petitioning conduct."  See Sosa v. DIRECTV, Inc., 437 F.3d 923,

25   929 (9th Cir. 2006).  That doctrine extends to "conduct

26   incidental to the prosecution of [a] suit."  Columbia Pictures

27   Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc., 944 F.2d 1525,

28   1528 (9th Cir. 1991), aff'd, 508 U.S. 49 (1993).  The

1  representations plaintiffs attribute to defendants rise far

2  beyond "petitioning conduct," however.  Taking credit for

3  another's history and achievements, designing one's website to

4  look the same as another's, using another's trademark publicly,

5  and performing the same rituals as another have nothing to do

6  with the present litigation.  None of that activity is related to

7  defending a lawsuit.  Accordingly, the court will not dismiss

8  plaintiffs' claims on Noerr-Pennington grounds.[9]

9      Fourth, defendants argue that plaintiffs' Lanham Act

10  claims are barred under the doctrine of res judicata because the

11  court already adjudicated those claims in Grange I.  (See Defs.'

12  Mem. at 17-18.)  Res judicata only bars claims that are identical

13  to each other, however.  Owens v. Kaiser Found. Health Plan,

14  Inc., 244 F.3d 708, 713 (9th Cir. 2001) (citing W. Radio Servs.

15  Co. v. Glickman, 123 F.3d 1189, 1192 (9th Cir.1997)).  Where a

16  subsequent claim does not "arise out of the same transactional

17  nucleus of facts" as its predecessor, it is not barred.  See id.

18  at 714.

19      Grange I decided ownership of the word "Grange," and

20  enjoined defendants from the use of that term (see Apr. 20 Order

21  at 3). The conduct alleged to support plaintiff's Lanham Act

22

23  _____

24      [9]    With respect to plaintiffs' California false
   advertisement claim, defendants argue that a separate litigation
25  privilege exists under California Civil Code section 47.  (See
   Defs.' Mem. at 21-22 (noting that California Civil Code section
26  47(b)(2) protects "communications by a litigant to a judicial
   proceeding that have some connection or logical relation to the
27  action").)  That argument fails for the reasons defendants'
   Noerr-Pennington argument fails.

28

1  claims in this action is different from the conduct enjoined in

2  Grange I.  It involves more than merely the use of the word

3  "Grange."  To the extent that the complaint here alleges that

4  defendants are representing they are the same organization as the

5  California State Grange, that they are responsible for the

6  history and achievements of the California State Grange, or

7  making other false or misleading representations causing

8  confusion among local granges, it goes beyond the complaint in

9  Grange I and seeks to enjoin different conduct.  Accordingly, the

10 court will not dismiss plaintiffs' Lanham Act claims on res

11 judicata grounds.

12      B.   Copyright Infringement

13          To state a claim for copyright infringement, plaintiff

14 must plausibly allege: "(1) ownership of a valid copyright; and

15 (2) that the defendant violated the copyright owner's exclusive

16 rights under the Copyright Act."  Ellison v. Robertson, 357 F.3d

17 1072, 1076 (9th Cir. 2004) (citing 17 U.S.C. § 501(a)).

18          Here, plaintiffs have attached, as exhibits to their

19 amended Complaint, copyright registrations for content on their

20 website, including information about the California State

21 Grange's history, foundation, and membership.  (See FAC Ex. B,

22 Copyright Registrations (Docket No. 75-2).)  They allege that

23 without permission, defendants copied such materials onto their

24 website in violation of section 106 of United States Copyright

25 Law, (see FAC ¶¶ 117-120), which confers upon copyright owners

26 the exclusive right to "reproduce the copyrighted work" or

27 "prepare derivative works based upon the copyrighted work," 17

28 U.S.C. § 106.  Because plaintiffs have alleged ownership of the

1   website materials and defendants' unauthorized copying of such

2   materials, they have stated a plausible claim for copyright

3   infringement.

4           Defendants argue that their website materials are not

5   identical to plaintiffs'.  (Defs.' Mem. at 25.)  To succeed on a

6   copyright infringement claim, however, plaintiff need not prove

7   identity of copied materials; substantial similarity suffices.

8   See Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990) ("[A]

9   plaintiff may establish copying by showing that the infringer

10  had access to the work and that the two works are substantially

11  similar.").  Plaintiffs have alleged substantial similarity in

12  the website materials.  (See, e.g., FAC ¶ 20 (alleging that

13  defendants' "advertisements and representation about its history

14  and goodwill on its new website . . . were copied verbatim from

15  the former California State Grange website except for the

16  substitution of 'CSG' in lieu of 'California State Grange'").)

17          Defendants also argue that plaintiffs did not rule out

18  the possibility that they independently created the website

19  materials after splitting from plaintiffs in 2013.  (See Defs.'

20  Mem. at 24-25.)  That argument misses the fact that plaintiffs

21  allege defendants copied materials from their website with

22  copyright registrations dated 2010.  (FAC ¶¶ 117, 119; Copyright

23  Registrations.)  Accordingly, the court will not dismiss

24  plaintiffs' copyright infringement claim.

25      C.  Trade Libel

26          Under California law, "[t]rade libel is the publication

27  of matter disparaging the quality of another's property, which

28  the publisher should recognize is likely to cause pecuniary loss

18

1  to the owner." <u>ComputerXpress, Inc. v. Jackson</u>, 93 Cal. App.

2  4th 993, 1010 (4th Dist. 2001) (citing <u>Leonardini v. Shell Oil</u>

3  <u>Co.</u>, 216 Cal. App. 3d 547, 572 (3d Dist. 1989)).   It encompasses

4  "all false statements concerning the quality of services or

5  product of a business which are intended to cause that business

6  financial harm and in fact do so."   <u>Leonardini</u>, 216 Cal. App. 3d

7  at 572.

8          Plaintiffs allege that defendants disparage their name

9  and goodwill by publicly claiming that the newly chartered

10  California State Grange "*IS NOT* the original California State

11  Grange" and not heir to the 146-year history that it has accrued

12  since being founded in 1870.   (FAC ¶¶ 20, 113.)   The alleged

13  statements are false, <u>see</u> <u>supra</u> note 5, and obviously calculated

14  to cause loss of goodwill and membership to plaintiffs.

15  Accordingly, plaintiffs have plausibly alleged trade libel.

16          D.   <u>Intentional Interference with Contractual Relations</u>

17          Under California law, "[t]he elements which a plaintiff

18  must plead to state the cause of action for intentional

19  interference with contractual relations are (1) a valid contract

20  between plaintiff and a third party; (2) defendant's knowledge of

21  this contract; (3) defendant's intentional acts designed to

22  induce a breach or disruption of the contractual relationship;

23  (4) actual breach or disruption of the contractual relationship;

24  and (5) resulting damage."   <u>Pac. Gas & Elec. Co. v. Bear Stearns</u>

25  <u>& Co.</u>, 50 Cal. 3d 1118, 1126 (1990).

26          Plaintiffs' claim appears to be that defendants are

27  causing local granges to breach their contractual duties under

28  Grange by-laws by convincing them to leave the California State

1    Grange to join the California Guild.[10]  (See FAC ¶¶ 112-113.)

2    They have not cited any by-laws that require local granges to

3    remain members of the California State Grange, however.  The by-

4    laws plaintiffs cite merely require that local granges "comply

5    with the Constitution, By-Laws and Codes of the Grange at all

6    levels." (Id. ¶ 109.)  There is no indication that such

7    obligations include remaining members of the Grange.  Moreover,

8    plaintiffs have not alleged that Grange by-laws are contractual

9    in nature--that is, that local granges offered and accepted

10   consideration in becoming Grange members, that remaining in the

11   Grange was part of the contract, and so forth.  Accordingly,

12   plaintiffs have failed to state a plausible claim for intentional

13   interference with contractual relations.

14        E.   Trespass and Conversion

15        Under California law, "[c]onversion is the wrongful

16   exercise of dominion over the property of another.  The elements

17   of a conversion claim are: (1) the plaintiff's ownership or right

18   to possession of the property; (2) the defendant's conversion by

19   a wrongful act or disposition of property rights; and (3)

20   damages." Hernandez v. Lopez, 180 Cal. App. 4th 932, 939 (4th

21   Dist. 2009) (quoting Burlesci v. Petersen, 68 Cal. App. 4th 1062,

22

23        [10]   Plaintiffs also appear to be alleging that defendants
     are causing local granges to breach Grange by-laws by
24   collaborating with them while they remain Grange members.  To the
     extent that is what the claim is, plaintiffs have alleged neither
25   the specific by-laws being broken nor that the by-laws are
     contractual to begin with.  Accordingly, that claim fails under
26   Federal Rule of Civil Procedure 8 for vagueness.  See Lee v. City
     of Los Angeles, 250 F.3d 668, 679 (9th Cir. 2001) (a complaint
27   must "give the defendant fair notice of what the plaintiff's
     claim is and the grounds upon which it rests").
28

1066 (1st Dist. 1998)), as modified (Dec. 28, 2009).  "Dubbed by

Prosser the 'little brother of conversion,' the tort of trespass

to chattels allows recovery for interferences with possession of

personal property 'not sufficiently important to be classed as

conversion' . . . ."  Intel Corp. v. Hamidi, 30 Cal. 4th 1342,

1350 (2003).

        Plaintiffs allege that defendants convert and trespass

upon their property by continuing to occupy Grange buildings and

refusing to return tangible Grange property after the 2013 split.

(See FAC at 50-51.)  In addition to "preventing Plaintiffs[ from]

access[ing] said property," defendants' actions have allegedly

"harmed Plaintiffs by causing confusion among the California

Granges" as to the identity of the California State Grange and

the California Guild.  (Id.)  Because plaintiffs allege ownership

of the property, defendants' wrongful occupation of and refusal

to return the property, and resulting damages, they have stated

plausible claims for trespass and conversion under California

law.

        Plaintiffs' trespass and conversion claims are not

barred under the doctrine of res judicata by the underlying state

court action in this case because that action remains pending on

appeal.  See Eichman v. Fotomat Corp., 759 F.2d 1434, 1439 (9th

Cir. 1985) ("Under California law . . . a judgment is not final

for purposes of res judicata during the pendency of and until the

resolution of an appeal."); see also Howard v. Am. Online Inc.,

208 F.3d 741, 748 (9th Cir. 2000) ("The preclusive effect of a

state court judgment in federal court is based on state

preclusion law.").  Neither does Grange I bar such claims, as

1   Grange I decided ownership of the word "Grange," (see Apr. 20

2   Order at 3), not defendants' subsequent alleged refusal to vacate

3   and return Grange property.  See W. Radio Servs., 123 F.3d at

4   1192 ("In order for res judicata to apply there must be . . . an

5   identity of claims . . . ."). Accordingly, the court will not

6   dismiss plaintiffs' trespass and conversion claims on res

7   judicata grounds.

8   III. Motion for a More Definite Statement

9        With respect to the claims the court will not dismiss,

10  defendant moves under Federal Rule of Civil Procedure 12(e) for a

11  more definite statement of the claims.  (Defs.' Mot. at 3-4.)  "A

12  Rule 12(e) motion is proper only where the complaint is so

13  indefinite that the defendant cannot ascertain the nature of the

14  claim[s] being asserted."  Sagan v. Apple Computer, Inc., 874 F.

15  Supp. 1072, 1077 (C.D. Cal. 1994) (citing Famolare, Inc. v.

16  Edison Bros. Stores, Inc., 525 F.Supp. 940, 949 (E.D. Cal.

17  1981)).  "Motions for a more definite statement are viewed with

18  disfavor and are rarely granted because of the minimal pleading

19  requirements of the Federal Rules.  Parties are expected to use

20  discovery, not the pleadings, to learn the specifics of the

21  claims being asserted."  Id. (citing In re American Int'l

22  Airways, Inc., 66 B.R. 642, 645 (E.D. Pa. 1986)).

23       Plaintiffs' amended Complaint provides more than enough

24  information to alert defendants as to the nature of the claims

25  asserted against them.  Defendants appear to have no trouble

26  responding to the claims in their motion to dismiss, in their

27  reply, and at oral argument.  Accordingly, the court will deny

28  defendants' motion for a more definite statement.

1          IT IS THEREFORE ORDERED that defendants' motion to

2   dismiss plaintiffs' first amended Complaint or, in the

3   alternative, for a more definite statement of claims, be, and the

4   same hereby is, GRANTED IN PART and DENIED IN PART as follows:

5          (1)  plaintiffs' "infringement of unregistered logo and

6               trade dress" and intentional interference with

7               contractual relations claims are DISMISSED;

8          (2)  defendants' motion to dismiss plaintiffs' other claims

9               is DENIED; and

10         (3)  defendants' motion for a more definite statement of the

11              non-dismissed claims is DENIED.

12  Dated:  November 15, 2016

13                                     WILLIAM B. SHUBB

14                                     UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    23