|    |                                                                                                          |                                               |
|----|----------------------------------------------------------------------------------------------------------|-----------------------------------------------|
|    | UNITED STATES DISTRICT COURT                                                                                                                             |
|    | EASTERN DISTRICT OF CALIFORNIA                                                                                                                           |
|    | ----oo0oo----                                                                                                                                             |

| NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY and CALIFORNIA STATE GRANGE, | CIV. NO. 2:16-201 WBS DB |
|---|---|
| Plaintiffs, | MEMORANDUM AND ORDER RE: MOTION TO DISQUALIFY |
| v. | |
| CALIFORNIA GUILD, formerly doing business as "California State Grange," and ROBERT MCFARLAND, | |
| Defendants. | |

----oo0oo----

On March 6, 2017, defendant Robert McFarland filed a notice with the court ("March 6 notice") stating that one of his attorneys of record, Amanda Griffith of the Ellis Law Group, would be withdrawing from this case, and attorney Anthony Valenti of the same firm would "remain [an] attorney[] of record" for him.[1] (Docket No. 112.) Valenti had previously represented

---

[1] Valenti had not appeared in this case prior to the March 6 notice.

1

plaintiff National Grange in a related case while at the firm of Porter Scott, the National Grange's current counsel of record. (See Pls.' Mot., Mem. ("Pls.' Mem.") at 3-4 (Docket No. 114-1).) McFarland withdrew Valenti from this case on March 10. (Docket No. 113.) Plaintiffs National Grange and California State Grange now move to disqualify the Ellis Law Group from this case on grounds that Valenti's conflict of interest should be imputed to the Ellis Law Group. (Pls.' Mot. (Docket No. 114).)

I.   Factual and Procedural Background

On February 1, 2016, the National Grange[2] brought this action against defendants California Guild and McFarland, alleging, inter alia, trademark infringement, false designation of origin, and false advertisement under the Lanham Act. (Compl. (Docket No. 1).) McFarland is represented in this action by the Ellis Law Group. (See Decl. of Robert McFarland ("McFarland Decl.") ¶ 2 (Docket No. 124-8).)

On March 6, 2017, McFarland filed a notice with the court stating that he would be withdrawing Amanda Griffith of the Ellis Law Group from this case, and Anthony Valenti of the same firm would "remain [an] attorney[] of record" for him. (Docket No. 112.)

Before being hired by the Ellis Law Group, Valenti had been employed by Porter Scott, the National Grange's current counsel of record, from March 10 to October 6, 2014. (See Decl. of Martin Jensen ("Jensen Decl.") ¶ 6 (Docket No. 114-2).) While

---

[2] The National Grange added its California affiliate, the California State Grange, as a plaintiff to this action on August 17, 2016. (See First. Am. Compl. ("FAC") (Docket No. 75).)

2

at Porter Scott, Valenti billed twenty-six hours working for the National Grange in a related action the National Grange had brought against the California Guild in the California Superior Court ("state action").[3] (See id. ¶ 7; Decl. of Mark Ellis ("Ellis Decl.") Ex. 5, Valenti Timesheet (Docket No. 124-14).) Valenti's involvement in the state action included "assist[ing] with discovery, draft[ing] memoranda, perform[ing] case law research, and communicat[ing] by phone and email with Plaintiff National Grange's former president" regarding case-related matters. (Jensen Decl. ¶ 7; see also Valenti Timesheet (corroborating Jensen declaration).)

Four days after McFarland filed the March 6 notice, plaintiffs filed the present Motion, seeking to disqualify Valenti and the Ellis Law Group from this case. (Pls.' Mot. at 4-7.) As McFarland has already withdrawn Valenti from this case,[4] (see Docket No. 113), the only issue presented in

---

[3] The state action, like this action, concerns property disputes which arose between the National Grange and the California Guild after the two parties disaffiliated in 2012. (See Docket No. 75-1 Ex. 1, Oct. 20, 2015 State Ct. Order at 2.) Whereas this action concerns ownership of "Grange" history, goodwill, logos, website designs, and other intangible property, (see FAC ¶¶ 18-24), the state action concerns ownership of bank account assets and real property, (see Oct. 20, 2015 State Ct. Order at 2). The court judicially notices the October 20, 2015 state action order submitted by plaintiffs for the fact that it addresses disputes between the National Grange and the California Guild over ownership of bank account assets and real property, a fact which none of the parties dispute. See Harris v. Cty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that federal courts "may take judicial notice of undisputed matters of public record").

[4] It is undisputed that Valenti has a conflict of interest with respect to, and thus may not participate in, this case. (See Pls.' Mem. at 4-6; McFarland's Opp'n at 4-6 (Docket

plaintiffs' Motion that remains pending before the court is whether the Ellis Law Group should be disqualified from this case.  Plaintiffs argue that the Ellis Law Group should be disqualified from this case because Valenti's conflict of interest should be imputed to the Ellis Law Group. (See Pls.' Mem. at 7-8.)  McFarland argues that the Ellis Law Group should not be disqualified from this case because the Ellis Law Group has screened Valenti from working on this case since the day it hired him. (See McFarland's Opp'n at 4-5 (Docket No. 124).) Listing Valenti as an active attorney on the March 6 notice, McFarland claims, was a clerical mistake. (Id. at 5-6.)

II. Discussion

In determining whether the Ellis Law Group should be disqualified from this case, the court must apply California law. See S.E.C. v. King Chuen Tang, 831 F. Supp. 2d 1130, 1141 (N.D. Cal. 2011) ("Federal courts in California look to [California] law to decide motions to disqualify."); see also E.D. Cal. L.R. 180(e) ("[A]ny attorney permitted to practice in this Court . . . shall become familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and court decisions applicable thereto, which are hereby adopted as standards of professional conduct in this Court.").

The law of vicarious disqualification, whereby a law firm is disqualified from a case on account of its employment of

---

No. 124).)

4

an attorney who has a conflict of interest with respect to that case, remains unsettled in California. Specifically, it remains unsettled under California law as to when vicarious disqualification of a firm is required, and when it is subject to a flexible case-by-case analysis.

In Henriksen v. Great Am. Sav. & Loan, 11 Cal. App. 4th 109 (1st Dist. 1992), a California appellate court held that a firm must be vicariously disqualified from a case when one of its attorneys "switche[d] sides" during that case. Id. at 115. In such situations, Henriksen held, no amount of screening will be sufficient to remove the taint of conflict from the firm. Id. at 116.

The California Supreme Court extended Henriksen's holding in Flatt v. Superior Court, 9 Cal. 4th 275 (1994), where it stated that a firm must also be vicariously disqualified from a case when one of its attorneys previously represented a party opposing the firm in the case in a "substantial[ly] relat[ed]" but different case. See id. at 283-84. Flatt's extension of Henriksen's holding, however, was dictum, as Flatt did not decide whether a firm should be disqualified. See id. at 279 (addressing whether an attorney with multiple clients has a duty to continue advising one client upon learning that the client's interests conflict with those of another client's); see also Kirk v. First Am. Title Ins. Co., 183 Cal. App. 4th 776, 796 (2d Dist. 2010) ("The Flatt case . . . was not concerned with whether a tainted attorney's law firm was subject to vicarious disqualification.").

The California Supreme Court then called into question

5

Flatt's extension of Henriksen's holding in People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc., 20 Cal. 4th 1135 (1999), where it stated, after dispositively applying Henriksen's holding to vicariously disqualify the firm in question, that it "need not consider" whether the firm in question would also have been disqualified from the case had it employed an attorney who previously represented the party opposing the firm in the case in a "substantially related" but different case and "imposed effective screening procedures" to prevent the attorney from participating in the case at hand. Id. at 1151. Subsequent California appellate court decisions have interpreted SpeeDee Oil to stand for its unstated assumption that a firm need not be vicariously disqualified from a case when it employs an attorney who previously represented a party opposing the firm in the case in a "substantially related" but different case so long as it imposes effective screening procedures to ensure that the attorney does not participate in the case at hand. See, e.g., Farris v. Fireman's Fund Ins. Co., 119 Cal. App. 4th 671, 689 n.17 (5th Dist. 2004).

In view of SpeeDee Oil and the subsequent cases which have interpreted it, a California appellate court has summarized the present status of vicarious disqualification law in California to be as follows: (1) Henriksen's holding, which requires that a firm be vicariously disqualified from a case when one of its attorneys switched sides during that case, remains good law, and (2) where Henriksen's holding does not apply, including situations where the attorney in question previously represented a party opposing his firm in a substantially related

6

but different case, the court should conduct a "case-by-case analysis," with a focus on screening procedures implemented by the attorney's firm, to determine whether the firm should be vicariously disqualified from the case at hand. See Kirk, 183 Cal. App. 4th at 800.

Because the court is not aware of a California case that has disputed Kirk's summary of California's vicarious disqualification law,[5] it will rely on Kirk's summary in deciding the present Motion. See Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1023 (9th Cir. 2016) ("[W]e will generally follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it.").

The conflict of interest in this case arises from Valenti's previous representation of the National Grange in the state action. Because the state action and this action are related but separate cases, Henriksen's holding does not resolve plaintiffs' Motion, and the court must conduct the "case-by-case analysis" set forth in Kirk. See Kirk, 183 Cal. App. 4th at 800.

---

[5] Plaintiffs note that Hitachi, Ltd. v. Tatung Co., 419 F. Supp. 2d 1158 (N.D. Cal. 2006), in contrast to Kirk, held that SpeeDee Oil did not invalidate Flatt's extension of Henriksen's holding and Flatt's extension of Henriksen's holding remains good law. (See Pls.' Mem. at 7-8.) Hitachi, however, relied partially on the premise that "no California court case after Henriksen . . . ha[d] expressly allowed the use of an ethical wall where an attorney moves from one private firm to another." Hitachi, 419 F. Supp. 2d at 1164. That premise is no longer true after Kirk. See Kirk, 183 Cal. App. 4th at 814 ("In sum, we have concluded that, when a tainted attorney moves from one private law firm to another, the law gives rise to a rebuttable presumption of imputed knowledge to the law firm, which may be rebutted by evidence of effective ethical screening"). Thus, Hitachi is of limited persuasive value.

7

Kirk's case-by-case analysis involves a two-step burden-shifting process whereby the party moving for disqualification must first "establish[] that [the] attorney [in question] is tainted with confidential information" adverse to that party. Id. at 809. If the moving party meets its burden, "a rebuttable presumption arises that the attorney shared [such] information with [his] firm," the non-moving party's counsel. Id. at 809-10. The burden then shifts to the non-moving party to rebut the presumption of shared confidences by establishing that the attorney's firm has imposed "ethical screening [that] will effectively prevent the sharing of confidences in [the] particular case." Id. at 801.

Here, plaintiffs have met their burden of establishing that Valenti is tainted with confidential information adverse to the National Grange.[6] Under California law, a "court will conclusively presume that [an] attorney possesses confidential information adverse to [his] former client" if "the former client establishes the existence of a substantial relationship between" the attorney's "former and current representation[s]." Henriksen, 11 Cal. App. 4th at 114; see also City Nat. Bank v. Adams, 96 Cal. App. 4th 315, 327 (2d Dist. 2002) (same).[7] "[A]

---

[6] The court need not consider whether the information Valenti is tainted with is also adverse to the California State Grange, as his conflict of interest with respect to the National Grange would be sufficient, absent effective ethical screening, to disqualify the Ellis Law Group from this case.

[7] McFarland cites Adams v. Aerojet-Gen. Corp., 86 Cal. App. 4th 1324 (3d Dist. 2001) for the proposition that the presumption of exposure to confidential information can be rebutted. (See McFarland's Sur-Reply at 4-7 (Docket No. 132).) Even if the court were to follow that case, the evidence before

8

'substantial relationship' exists" for these purposes "whenever the subjects of the prior and the current representations are linked in some rational manner." Jessen v. Hartford Cas. Ins. Co., 111 Cal. App. 4th 698, 711 (5th Dist. 2003). It is clear to the court that the state action and this action "are linked in [a] rational manner," as both actions concern property disputes which arose between the National Grange and the California Guild after the two parties disaffiliated in 2012. See supra note 3.

McFarland contends that the state action and this action are not substantially related because this action concerns ownership of "Grange" history, goodwill, logos, website designs, and other intellectual property, while the state action concerns ownership of bank account assets and real property. (See McFarland's Sur-Reply at 8-9 (Docket No. 132).) The court disagrees with McFarland's contention that the type of property at issue is material to whether this action is substantially related to the state action for vicarious disqualification purposes. While the two actions may differ in terms of the type property at issue, they each concern, at core, the same question of whether the California Guild may continue to assume the identity of the California State Grange after it disaffiliated from the National Grange in 2012. That question clearly links

---

the court does not indicate that Valenti was not exposed to confidential information at Porter Scott. Valenti's Porter Scott billing records indicate that he "communicated by phone and email with [the National Grange's] former president" and conducted "discovery, drafted memoranda, [and] performed case law research" on the National Grange's behalf while at Porter Scott. (Jensen Decl. ¶ 7; see also Valenti Timesheet (corroborating Jensen declaration).) Each of those activities indicates exposure to client confidences.

the state action and this action in a rational manner.

Because the state action and this action are linked in a rational manner, they are "substantially related." Thus, the court must presume that Valenti is tainted with confidential information adverse to the National Grange. See Henriksen, 11 Cal. App. 4th at 114; City Nat. Bank, 96 Cal. App. 4th at 327.

Having found that Valenti is tainted with confidential information adverse to the National Grange, the court next considers whether McFarland has rebutted the presumption of shared confidences by establishing that the Ellis Law Group has imposed "ethical screening [that] will effectively prevent the sharing of confidences in [this] case."

McFarland represents, citing declarations from attorneys and other employees at the Ellis Law Group, that Valenti has been screened from participating in this action since the beginning of his employment at the Ellis Law Group. (McFarland's Opp'n at 4 (citing Ellis Decl. ¶ 5 (Docket No. 124-14) and Decl. of Anthony Valenti ("Valenti Decl.") ¶ 8 (Docket No. 124-13)).) According to McFarland, all employees assigned to this action at the Ellis Law Group "were instructed not to talk to Mr. Valenti about the Grange matters, and [Valenti] was so instructed as well." (Id. at 4-5 (citing Ellis Decl. ¶ 8, Valenti Decl. ¶ 8, Decl. of Paula Mahan-Crary ("Mahan-Crary Decl.") ¶ 2 (Docket No. 124-10), Decl. of Amanda Griffith ("Griffith Decl.") ¶ 6 (Docket No. 124-6), and Decl. of Aleysya Nalbandyan ("Nalbandyan Decl.") ¶ 4 (Docket No. 124-1)).) Valenti has also purportedly been "segregated from Grange files, which are stored in a Grange war room, to which he has no

access." (Id. at 5 (citing Ellis Decl. ¶ 7 and Mahan-Crary Decl. ¶ 4).)

The "ethical wall" imposed on Valenti since his arrival at the Ellis Law Group, according to McFarland, has been effective. No Ellis Law Group employee assigned to this action has "communicated with Mr. Valenti regarding information he learned or work he did at Porter Scott," McFarland represents, and Valenti has purportedly "never worked on any Grange matter," "participated in conferences on Grange cases," or "participated in internal communications about the [Grange] cases" while at the Ellis Law Group. (Id. (citing Valenti Decl. ¶¶ 8-9, Ellis Decl. ¶ 6, Mahan-Crary Decl. ¶ 6, Griffith Decl. ¶ 4, Nalbandyan Decl. ¶ 4, and McFarland Decl. ¶ 11).)

Notwithstanding the "ethical wall" that the Ellis Law Group has imposed on Valenti, the March 6 notice filed by the Ellis Law Group lists Valenti as an active attorney in this case. (Docket No. 112.) Additionally, a set of emails submitted by plaintiffs show that Mark Ellis, an attorney at the Ellis Law Group, copied Valenti on scheduling emails relevant to a separate action involving the California State Grange ("scheduling emails").[8] (See Docket No. 118-1 Ex. E, Scheduling Emails.) The March 6 notice and scheduling emails, plaintiffs suggest, show that the Ellis Law Group's ethical wall has not been effective in preventing Valenti from actively participating in "Grange"-related cases, including this case, and, in doing so, using

---

[8] That action is entitled California State Grange and Ed Komski v. California Grange Foundation, No. 34-2016-192665 CU MC GDS (Cal. Sup. Ct. filed Apr. 5, 2016).

11

confidential information he obtained at Porter Scott against them in this case.  (See Pl.'s Mem. at 8; Pl.'s Reply at 7-8 (Docket No. 125).)

While the March 6 notice and scheduling emails establish that Ellis Law Group employees have not been perfect in their efforts to isolate Valenti from "Grange"-related cases, including this case, they do not establish that Valenti is actively participating in this case, as plaintiffs suggest.

The March 6 notice, McFarland explains, lists Valenti as an active attorney in this case because the Ellis Law Group paralegal who filed the notice forgot to add another attorney's name in place of Valenti's name before filing the notice.  Ellis Law Group paralegals, according to McFarland, have created a number of "template" attorney withdrawal notices which use Valenti's name as a "placeholder" until other attorneys' names are added.  (Id. at 5 (citing Ellis Decl. ¶ 9 and Decl. of Jennifer Mueller ("Mueller Decl.") ¶¶ 3-4 (Docket No. 124-9)).) The March 6 notice, McFarland explains, was one such "template" attorney withdrawal notice, and Valenti's name was left on the notice by "pure mistake."  (Id. at 6.)  Valenti, McFarland represents, "was never expected to be [an] active . . . attorney" in this case.  (Id. at  5-6 (citing Ellis Decl. ¶ 9, Decl. of Rosanne Estrella ("Estrella Decl.") ¶ 5 (Docket No. 124-11), and Mueller Decl. ¶ 5).)

The scheduling emails, McFarland explained at oral argument, include Valenti as a copied party because the name recognition function on Ellis' computer recognized part of another attorney's name, which Ellis had typed, to be Valenti's

12

name, and added Valenti to the emails without Ellis' knowledge. McFarland represented that Ellis never intended to copy Valenti on the emails, and that doing so was also a pure mistake. The emails did not address any substantive legal matters, and Valenti did not actively participate in the emails. (See Scheduling Emails.)

In sum, the March 6 notice and scheduling emails both appear to have included Valenti by mistake. Because both documents appear to have included Valenti by mistake, they do not establish that Valenti is actively participating in this case. Having been satisfied that neither document establishes Valenti's active participation in this case, the court is left with no evidence showing that Valenti is using or sharing confidential information he obtained at Porter Scott in this case.[9] Without such evidence, and in light of the numerous declarations submitted by McFarland testifying that the Ellis Law Group has taken steps to ethically screen Valenti from this case and Valenti has not actively participated in this case, the court will not disqualify the Ellis Law Group from this case. See Kirk, 183 Cal. App. 4th at 801.

The court's decision here is guided in part by the

---

[9] Plaintiffs cite the fact that the Ellis Law Group is an eight-attorney firm and the fact that Valenti shares a secretary with another Ellis Law Group attorney who is assigned to "Grange" cases as circumstantial evidence supporting a reasonable inference that Valenti disclosed confidential information to Ellis Law Group staff. (See Pls.' Reply at 9-10.) Neither fact cited by plaintiffs supports that inference. The relevant issue here is whether Valenti disclosed confidential information to Ellis Law Group staff. How many attorneys comprise the Ellis Law Group and who Valenti's secretary is have no bearing upon that issue.

```
 1  Ninth Circuit's admonition that in deciding motions to
 2  disqualify, courts should give consideration to a client's "right
 3  to choice of counsel." Radcliffe v. Hernandez, 818 F.3d 537, 547
 4  (9th Cir. 2016) (quoting William H. Raley Co. v. Superior Court,
 5  149 Cal. App. 3d 1042, 1048 (4th Dist. 1983)). A motion to
 6  disqualify counsel "ultimately . . . involves a conflict between
 7  a client's right to counsel of his choice and the need to
 8  maintain ethical standards of professional responsibility."
 9  Comden v. Superior Court, 20 Cal. 3d 906, 915 (1978). While "the
10  need to maintain ethical standards of professional
11  responsibility" is an important policy consideration, it does not
12  always outweigh a party's right to choice of counsel. See Kirk,
13  183 Cal. App. 4th at 807-808, 817. Where, as here, the party
14  whose counsel is at issue has offered extensive affidavit
15  evidence indicating that its counsel has put in place ethical
16  screening with respect to the attorney in question, and no
17  evidence shows that the attorney has breached confidences, the
18  need to maintain ethical standards of professional responsibility
19  does not outweigh the party's right to choice of counsel. See
20  id. at 801, 817.
21         For the reasons stated in this Order, the court will
22  deny plaintiffs' Motion disqualify the Ellis Law Group from this
23  case.
24         IT IS THEREFORE ORDERED that plaintiffs' Motion to
25  disqualify the Ellis Law Group from this case be, and the same
26  hereby is, DENIED.
27  Dated:  May 11, 2017
28                                  WILLIAM B. SHUBB
                                    UNITED STATES DISTRICT JUDGE
```